**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MELISSA BARKER, an individual, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KAPSCH TRAFFICCOM USA, INC., and GILA, LLC,<br><br>        Defendants. | Case No. 19-cv-00987-TWP-MJD |

**DEFENDANTS KAPSCH TRAFFICCOM USA, INC. AND GILA, LLC'S BRIEF**
**IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

    I.      The RiverLink Tolling System ............................................................................... 4

    II.     State Entities and Defendants ................................................................................. 4

    III.   Plaintiff's Allegations Regarding "Incurred" Fees and Missing Notices ............... 7

ARGUMENT ............................................................................................................................. 9

    I.      The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) for Lack
         of Subject Matter Jurisdiction. ............................................................................... 9

    II.     The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because
         Plaintiffs Have Not – and Cannot – State a Claim Against Defendants. .............. 12

        A.    Plaintiff's Unjust Enrichment and Money and Received Claims
            Warrant Dismissal. ................................................................................... 13

        B.    Plaintiff's Fraud-Related Claims (Fraud, Violation of the IDCSA,
            Deception/Intentional Misrepresentation, And Constructive Fraud)
            Warrant Dismissal. ................................................................................... 15

            1.     *Plaintiff Fails to Allege Fraud with Particularity.* ....................... 15

            2.     *Plaintiff Fails to Allege Reasonable Reliance on Alleged
                Misstatements.* ............................................................................... 22

            3.     *Plaintiff Fails to Allege Damages.* ............................................... 23

            4.     *Plaintiff's Constructive Fraud Claim Suffers From
                Additional Defects Requiring Dismissal.* ...................................... 23

        C.    Plaintiff's Negligence Claim Warrants Dismissal. ................................... 24

            1.     *Plaintiff's Claim Is Foreclosed by The Economic Loss
                 Doctrine.* ........................................................................................ 25

            2.     *Plaintiff's Claim Fails to Allege Facts Giving Rise to Tort
                 Duty, or Suggesting That Plaintiff Was Actually Injured.* ............ 27

CONCLUSION ......................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Ackerman v. Nw. Mut. Life Ins. Co.*,
　172 F.3d 467 (7th Cir. 1999) ..................................................................................................15

*Allgire v. HOVG, LLC*,
　No. 1:16-CV-981-WTL-DKL, 2017 WL 1021394 (S.D. Ind. Mar. 16, 2017)........................10

*Amchem Prods., Inc v. Windsor*,
　521 U.S. 591 (1997)...................................................................................................................9

*Anastos v. Honeywell Int'l, Inc.*,
　No. 3:10-CV-208-TLS, 2010 WL 3526265 (N.D. Ind. Sept. 3, 2010).....................................6

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
　572 F.3d 440 (7th Cir. 2009) ....................................................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................................12

*Bell & Howell Fin. Servs. Co. v. St. Louis Pre-Sort, Inc.*,
　No. 97 C 6063, 1999 WL 35316 (N.D. Ill. Jan. 11, 1999) .....................................................19

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007).....................................................................................................12, 19, 20

*Borsellino v. Goldman Sachs Grp., Inc.*,
　477 F.3d 502 (7th Cir. 2007) ..................................................................................................16

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S.Ct.1773
　(2017) .......................................................................................................................................8

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
　No. 12 C 7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013).....................................................10

*Carter v. HSBC Mortg. Servs., Inc.*,
　No. 115CV01938TWPMPB, 2016 WL 5121984 (S.D. Ind. Sept. 21, 2016).........................14

*Cincinnati Life Ins. Co. v. Grottenhuis*,
　No. 2:10-CV-00205, 2011 WL 1107114 (S.D. Ind. Mar. 23, 2011), *aff'd sub*
　*nom. Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) ..................................24

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983)...................................................................................................................10

*Cornielsen v. Infinium Capital Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ...........................................................................................15, 19

*Crissen v. Gupta*,
    994 F. Supp. 2d 937 (S.D. Ind. 2014).....................................................................................14

*Design Time, Inc. v. Synthetic Diamond Tech., Inc.*,
    674 F. Supp. 1564 (N.D. Ind. 1987).......................................................................................19

*Diedrich v. Ocwen Loan Servicing, LLC*,
    839 F.3d 583 (7th Cir. 2016)....................................................................................................9

*Doe v. Howe Military Sch.*,
    227 F.3d 981 (7th Cir. 2000) .............................................................................................22, 23

*Ello v. Brinton*,
    No. 2:14-CV-299-TLS, 2015 WL 2340754 (N.D. Ind. May 13, 2015) .................................19

*Emery v. Am. Gen. Fin., Inc.*,
    134 F.3d 1321 (7th Cir. 1998) ...............................................................................................19

*Ennenga v. Starns*,
    677 F.3d 766 (7th Cir. 2012) ...................................................................................................5

*Gonzalez v. ADT LLC*,
    161 F. Supp. 3d 648 (N.D. Ind. 2016) ...................................................................................26

*Grace Vill. Health Care Facilities, Inc. v. Lancaster Pollard & Co.*,
    896 F. Supp. 2d 757 (N.D. Ind. 2012) ...................................................................................21

*Gradeless v. Am. Mut. Share Ins. Corp.*,
    No. 1:10-CV-0086-TWP-DML, 2011 WL 1107093 (S.D. Ind. Mar. 23, 2011) ......................8

*Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*,
    927 F.2d 988 (7th Cir. 1991) .................................................................................................15

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ...................................................................................................9

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) .............................................................................................12, 15

*Hughes v. Chattem, Inc.*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011)..................................................................................18

*Iqbal. Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) .................................................................................................19

*JMB Mfg., Inc. v. Child Craft, LLC*,
    799 F.3d 780 (7th Cir. 2015) ................................................................................................26

*Jones v. Bridgepoint Educ., Inc.*,
    No. 1:16-CV-338, 2017 WL 2438461 (N.D. Ind. June 5, 2017).................................21, 22, 23

*In re Julian*,
    No. 12-7394-RLM-7, 2013 WL 625346 (Bankr. S.D. Ind. Feb. 20, 2013)............................22

*Kruse v. GS Pep Tech. Fund 2000 LP*,
    897 F. Supp. 2d 769 (N.D. Ind. 2012) ..................................................................................19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................................9

*McVay v. Store House Co.*,
    No. 116CV00644SEBMJD, 2016 WL 9461331 (S.D. Ind. Oct. 24, 2016)...........................14

*Minch v. City of Chicago*,
    486 F.3d 294 (7th Cir. 2007) ..................................................................................................6

*Mudd v. Ford Motor Co.*,
    178 F. App'x 545 (7th Cir. 2006) ..........................................................................................23

*Munch v. Sears Roebuck & Co.*,
    Nos. 06 C 7023, 07 C 0412, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007)...........................16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...............................................................................................................9

*Owen v. Regence BlueCross BlueShield of Utah*,
    388 F. Supp. 2d 1318 (D. Utah 2005).....................................................................................11

*Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*,
    No. 1:13-CV-00133-RLY, 2014 WL 6750042 (S.D. Ind. Dec. 1, 2014) ...............................26

*Parm v. Nat'l Bank of Cal., N.A.*,
    No. 4:14-CV-0320-HLM, 2015 WL 11605748 (N.D. Ga May 20, 2015), *aff'd*,
    835 F.3d 1331 (11th Cir. 2016) .............................................................................................11

*Parrot v. Family Dollar, Inc.*,
    No. 17 C 222, 2018 WL 2118195 (N.D. Ill. 2018)..................................................................19

*Peterson Indus., Inc. v. Lake View Tr. & Sav. Bank*,
    584 F.2d 166 (7th Cir. 1978) .................................................................................................22

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .................................................................................................16

*Pollack v. U.S. Dep't of Justice*,
    577 F.3d 736 (7th Cir. 2009) .....................................................................................................8

*Porch-Clark v. Engelhart*,
    930 F. Supp. 2d 928 (N.D. Ill. 2013), *aff'd* (Dec. 10, 2013) ..................................................11

*Practice Mgmt. Supp. Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840,
    860-62 (N.D. Ill. Mar. 12, 2018) ..............................................................................................8

*Retired Chi. Police Ass'n v. City of Chi.*,
    76 F.3d 856 (7th Cir. 1996) .....................................................................................................11

*Robin v. Arthur Young & Co.*,
    915 F.2d 1120 (7th Cir. 1990) .................................................................................................22

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*,
    No. 117CV00949LJMDML, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017) .........................26

*Ross v. Albany Med. Ctr.*,
    916 F. Supp. 196 (N.D.N.Y.), *aff'd*, 104 F.3d 351 (2d Cir. 1996) .........................................11

*Schafer v. Jeld Wen Doors/IWP Custom Door Div.*,
    No. 2:07-CV-163-TLS, 2007 WL 3407659 (N.D. Ind. Nov. 9, 2007) ...................................19

*Schott v. Huntington Nat'l Bank*,
    914 F. Supp. 2d 933 (S.D. Ind. 2012) .....................................................................................12

*SelectSun GMBH v. Porter, Inc.*,
    No. 1:14-CV-215, 2017 WL 1178732 (N.D. Ind. Mar. 30, 2017)..........................................25

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ...................................................................................................10

*Skinner v. Metro. Life Ins. Co.*,
    829 F. Supp. 2d 669 (N.D. Ind. 2010) .......................................................................16, 23, 24

*SMC Corp. v. Peoplesoft USA Inc.*,
    No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004)....................16, 21

*Spears v. Metro. Life Ins. Co.*,
    No. 2:07-CV-88 JVB, 2009 WL 2408928 (N.D. Ind. Aug. 4, 2009) .....................................14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009).................................................................................................................9

*Tellis v. Sipes*,
    No. 4:12-CV-00007-SEB, 2012 WL 1969054 (S.D. Ind. May 31, 2012) ................................8

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
137 S. Ct. 1645 (2017)..............................................................................................................8

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) ...........................................................................................19, 20

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) .............................................................................................6, 7

*Vesely v. Armslist LLC*,
762 F.3d 661 (7th Cir. 2014) ...............................................................................................12

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) .................................................................................................18

*Warth v. Seldin*,
422 U.S. 490 (1975)...............................................................................................................9

*Weddle v. Smith & Nephew, Inc.*,
No. 14 C 09549, 2016 WL 1407634 (N.D. Ill. Apr. 11, 2016)...............................................19

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) .................................................................................................6

**State Cases**

*Alexander v. PSB Lending Corp.*,
800 N.E.2d 984 (Ind. Ct. App. 2003).....................................................................................11

*Berghausen v. Microsoft Corp.*,
765 N.E.2d 592 (Ind. App. Ct. 2002)..............................................................................17, 18

*Brown v. City of Valparaiso*,
67 N.E.3d 652 (Ind. Ct. App. 2016).......................................................................................28

*Darst v. Illinois Farmers Ins. Co.*,
716 N.E.2d 579 (Ind. Ct. App. 1999)......................................................................................26

*Eby v. York-Division, Borg-Warner*,
455 N.E.2d 623 (Ind. Ct. App. 1983)......................................................................................26

*Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*,
929 N.E.2d 722 (Ind. 2010) ...................................................................................................25

*Kohl's Indiana, L.P. v. Owens*,
979 N.E.2d 159 (Ind. Ct. App. 2012).......................................................................................13

*Lawson v. First Union Mortg. Co.*,
786 N.E.2d 279 (Ind. Ct. App. 2003)...........................................................................2, 13, 17

*Lehman v. Shroyer*,
  721 N.E.2d 365 (Ind. Ct. App. 1999)........................................................................................16

*McCormick Piano & Organ Co. v. Geiger*,
  412 N.E.2d 842 (Ind. Ct. App. 1980)........................................................................................21

*McKinney v. State*,
  693 N.E.2d 65 (Ind. 1998) ..............................................................................................16, 20

*Plymale v. Upright*,
  419 N.E.2d 756 (Ind. Ct. App. 1981)........................................................................................22

*Ryan v. TCI Architects/Engineers/Contractors, Inc.*,
  72 N.E.3d 908 (Ind. 2017) ..........................................................................................................27

*Schultz v. Indiana*,
  731 N.E.2d 1041 (Ind. Ct. App. 2000)......................................................................................11

*Shelby Eng'g Co. v. Action Steel Supply, Inc.*,
  707 N.E.2d 1026 (Ind. Ct. App. 1999)......................................................................................15

*Stachowski v. Estate of Radman*,
  95 N.E.3d 542 (Ind. Ct. App. 2018)....................................................................................27, 28

*Town & Country Homecenter of Crawfordsville, Indiana, Inc. v. Woods*,
  725 N.E.2d 1006 (Ind. Ct. App. 2000)......................................................................................24

*U.S. Bank, N.A. v. Integrity Land Title Corp.*,
  929 N.E.2d 742 (Ind. 2010) ................................................................................................25, 26

*Walker v. Martin*,
  887 N.E.2d 125 (Ind. Ct. App. 2008)........................................................................................27

*Weiss v. Grand Campus Living, Inc.*, No. 118CV00434JRSTAB, 2019 WL
  1261405, at *2 (S.D. Ind. Mar. 19, 2019) ..................................................................................8

*Wheatcraft v. Wheatcraft*,
  825 N.E.2d 23 (Ind. Ct. App. 2005)..........................................................................................23

*Wright v. Pennamped*,
  657 N.E.2d 1223 (Ind. Ct. App. 1995)................................................................................14, 22

*Zoeller v. E. Chi. Second Century, Inc.*,
  904 N.E.2d 213 (Ind. 2009) ..................................................................................2, 13, 14, 18

## Federal Statutes

Fed. R. Civ. P. 9(b) .............................................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) ................................................................................................................2, 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................................2, 5, 11, 24

**State Statutes**

Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2 *et seq.* ......................2, 16, 18, 27

## INTRODUCTION

The gravamen of Plaintiff's Complaint is that, on two occasions, Plaintiff—a motorist who used the Ohio River bridges connecting Southern Indiana with Kentucky—"incurred" an additional $5.00 administrative fee that is charged when a motorist fails to pay a bridge toll within 30 days of receiving a first toll notice, despite Plaintiff allegedly not having received a first notice. Plaintiff contends that Defendants provided electronic tolling services for the Louisville-Southern Indiana Ohio River Bridges Project (the "LSIORB Project"), a collaborative effort between the States of Indiana and Kentucky, and, in doing so, purportedly conjured up a scheme by which they would "routinely" not send original toll notices, purportedly to collect escalated administrative fees thereafter. (Complaint ("Compl."), ¶¶ 7, 25-26.)

Plaintiff's Complaint faces two overarching flaws. First, Plaintiff did not pay any additional $5.00 administrative fee for either of the two alleged tolls/administrative fee invoices, as any and all such fees had been fully waived or credited more than a year before this case was even commenced. Plaintiff's Complaint thus, notably, does not allege that she *paid* these fees.[1] Thus, Plaintiff has not been damaged and has no personal stake left in this dispute. Second, as the contracts referenced in and material to the Complaint confirm, the two states in charge of the LSIORB Project—Indiana and Kentucky—have the exclusive right to all toll revenues and all administrative fees in question. Defendants—who are paid on a fixed-fee basis—*do not retain any administrative fees at all*. Defendants therefore have not only no incentive to inflate the administrative fees, they have nothing to disgorge, even if they were ever found liable (and they should not be). With both Plaintiff and the Defendants lacking any stake in their respective sides of this dispute, Plaintiff's fundamental theory of the case collapses like a house of cards.

---

[1] Troublingly, though, Plaintiff fails to ever inform the Court that the fees about which she now complains were long ago waived and/or credited, and thus never actually incurred.

Plaintiff's class action Complaint alleges seven causes of action.  The first two counts attempt to state claims of unjust enrichment and money had and received.  (Compl. ¶¶ 39-43, 44-48.)  The next four counts—fraud (Count III, Compl. ¶¶ 49-54), violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2 *et seq.*  ("IDCSA," Count VI, Compl. ¶¶ 55-62), deception or intentional misrepresentation (Count V, Compl. ¶¶ 63-70), and constructive fraud (Count VII, Compl. ¶¶ 80-87)—are all variations of a fraud theory, relating to the fact that the form second Toll Notice was marked as "2nd" even though Plaintiff allegedly never received the first.  Finally, the remaining count (Count VI, Compl. ¶¶ 71-79) purports to state a claim of negligence.  None of Plaintiff's theories is viable.

*First*, the entire Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1), based on Plaintiff's lack of standing.  Having not suffered any pecuniary or other injury as a result of the purported lack of receipt of a first Toll Notice, Plaintiff cannot demonstrate an injury-in-fact, making this controversy non-justiciable as a matter of law.

*Second*, Plaintiff's unjust enrichment and money had and received claims warrant dismissal under Fed. R. Civ. P. 12(b)(6) because Plaintiff never paid any money or other benefit to Defendants, and Defendants never retained any such benefit.  The entirety of the tolling revenues in question are the property of the States of Indiana and Kentucky.

*Third*, Plaintiff's fraud-related claims must be dismissed because Plaintiff cannot satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Plaintiff does not allege an actual misrepresentation—indeed, the 2nd Toll Notice freely discloses the schedule of fines and invites Plaintiff to appeal; she does not identify a specific individual—or even specific Defendant—who made any alleged statement; and she does not come close to offering any facts that would plausibly suggest that Defendants had the requisite *scienter* in (allegedly) mailing the routine, pre-approved

2

form notice to Plaintiff.  Indeed, a far more plausible explanation on these facts is that the alleged lack of receiving a corresponding 1st Toll Notice was the result of inadvertence and/or due to a mailing error, or a failure in delivery at some point along the way, without anyone knowing that a 1st Toll Notice allegedly was not received and/or had not been sent prior to Plaintiff being sent the 2nd Toll Notices.  Moreover, Defendants—who retained no part of the administrative fees—plainly had no incentive to collect any such fees from Plaintiff.

In addition, Plaintiff's fraud-based claims fail because Plaintiff cannot show justifiable reliance on any "misrepresentation" (being equally in position to know whether she received the first notice) and because, as noted above, Plaintiff has not alleged any damages.  Plaintiff's constructive fraud claim faces an additional hurdle requiring dismissal—Plaintiff failed to plead facts to establish a special relationship between the parties, as is necessary to state a claim for constructive fraud.

***Fourth***, Plaintiff's negligence claim must be dismissed because: (a) it is barred by the economic loss doctrine; (b) Defendants plainly did not owe a non-contractual, tort duty of care to Plaintiff; and (c) Plaintiff did not (and cannot) allege she suffered actual damages.

In sum, each of the claims in Plaintiff's Complaint should be dismissed with prejudice for the reasons articulated in this Motion.

## FACTUAL BACKGROUND

The allegations in Plaintiff's Complaint relate to certain administrative fees that Plaintiff was allegedly "assessed" following her crossing of the Ohio River bridges that connect Southern Indiana and Louisville, Kentucky.  (Compl. ¶¶ 1, 7, 24.)  These bridges are part of the LSIORB Project managed by the States of Indiana and Kentucky, which is he intended to build, improve and maintain toll bridges over the Ohio River.  (*Id.* ¶ 7.)  These bridges are equipped with the

3

electronic toll collection system known as RiverLink.  (*Id.*)  Plaintiff alleges that she used the RiverLink system on four separate occasions in 2017.  (*Id.* ¶¶ 20-21.)

## I.    The RiverLink Tolling System

For motorists with a prepaid RiverLink account and a transponder, toll system sensors read the transponder and automatically deduct the appropriate toll amount from the motorist's account. (*Id*. ¶ 9.)  For motorists without a prepaid RiverLink account, or with an inadequate balance in their account, cameras capture a license plate of the vehicle and an invoice ("1st Toll Notice") for the amount of the toll is then mailed to the registered owner of the vehicle, as identified in state vehicle registration records.  (*Id.* ¶ 10.)  If a motorist does not pay the toll within thirty (30) days of receiving the 1st Toll Notice, a 2nd Toll Notice is generated and mailed out—this time including the unpaid toll amounts and an additional $5.00 administrative fee.  (*Id.* ¶ 12.)  If the 2nd Toll Notice is not paid within thirty (30) days, a "Violation Notice" is generated, which includes the unpaid toll, the $5.00 administrative fee, and *an additional* $25 violation fee.  (*Id*. ¶ 13.)  Finally, if the Violation Notice is not paid within thirty (30) days, a "Collection Notice" is generated, which includes another collections fee in the amount of $30.00.  (*Id*. ¶ 14.)

## II.    State Entities and Defendants

According to the Complaint, Defendants Kapsch TrafficCom USA, Inc. ("Kapsch") and Gila, LLC ("Gila") were "[t]ogether" responsible for the toll invoicing system for RiverLink.  (*Id.* ¶ 18.)  The Complaint lumps the Defendants together in several other respects, alleging that "Defendants" in the aggregate failed to mail the motorists the 1st Toll Notices, and instead purportedly charged motorists a $5.00 administrative fee in the very first notice received.  (*Id.* ¶¶ 19, 24, 26.)  The Complaint then brashly alleges, "[u]pon information and belief," that Defendants charged motorists penalties "as part of a scheme with the intent to defraud and mislead, and/or

4

have otherwise failed to cure their misconduct despite notice of the same and opportunity." (*Id.* ¶ 27.)

_**State Entities.**_  To facilitate the financing, construction, operation and maintenance of the Project, the States of Kentucky and Indiana, through their respective agencies (collectively, the "State Entities"), entered into a Bi-State Development Agreement Concerning the LSIORB Project.[2]  The Development Agreement established the Joint Board, which in turn authorized the Indiana Finance Authority ("IFA") to solicit, evaluate, negotiate, enter into and administer agreements for the Project.[3]  The Development Agreement provides that Kentucky and Indiana split Toll Revenues from the Project—including "the gross amount of all tolls, administrative fees, violation charges" and other charges—with 50% going to each State, subject to certain adjustments not material to this Motion.[4]

_**Defendant Kapsch.**_  In 2015, Defendant Kapsch was awarded a prime contract to act as a toll services provider for the LSIORB Project.  (Compl. ¶ 16.)  Pursuant to the Toll Services

---

[2] A copy of this Agreement (hereafter, the "Development Agreement") between the State of Indiana (by and through the Indiana Department of Transportation and the Indiana Finance Authority), the Commonwealth of Kentucky (by and through the Kentucky Transportation Cabinet and the Kentucky Public Transportation Infrastructure Authority), and the Louisville and Southern Indiana Bridges Authority is publicly available on the Indiana Department of Transportation website: https://www.in.gov/indot/files/2012-10-16-LSIORB-final-Development-Agreement.pdf (last accessed Apr. 11, 2019) and attached as Exhibit A to the Declaration of Irina Kashcheyeva in Support of Defendants' Joint Motion to Dismiss (hereafter "Kashcheyeva Decl.").  It is axiomatic that a district court is permitted to take judicial notice of public documents on an official government website while considering a motion to dismiss under Rule 12(b)(6).  *See Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

[3] *See* Development Agr., ¶ 2.1; *see also* Interlocal Cooperation Agreement for the Design, Procurement, Construction, Financing, Tolling, Operation and Maintenance for the LSIORB Project (hereafter, the "Interlocal Agreement"), § 3.01.  A copy of the Interlocal Agreement, which is incorporated by reference into the Development Agreement (at § 2.1), is likewise publicly available on the State of Indiana website: https://www.in.gov/indot/files/2012-10-16-Interlocal_Agreement.pdf (last accessed Apr. 6, 2019) and attached as Exhibit B to the Kashcheyeva Declaration.  The Interlocal Agreement can therefore also be considered in connection with this Motion without triggering conversion.

[4] Development Agr., §§ 1.39, 1.56, 1.92, 8.1.9, 11.3.1.

Agreement between Kapsch and the State Entities,[5] Kapsch performed its services for a fixed price, and reimbursement of certain actual direct costs.[6]  The Kapsch Agreement (consistent with the terms of the Development Agreement) makes clear that all gross revenues from the Project—including all administrative fees at issue in this case—are expressly designated as "public funds," which Kapsch holds in trust for the State Entities' Joint Board until they are deposited into specified accounts.[7]  These accounts (including a separate account for administrative fees) are managed by a custodian designated by the State Entities.[8]  In sum, Kapsch's compensation under the Kapsch Agreement is not in any way related to the amount of administrative fees assessed or paid by motorists, and Kapsch does not retain any administrative fees for itself.

_**Defendant Gila**_.  According to the Complaint, Kapsch hired Gila to act as its agent and provide various services including image review, account and transponder management, payment processing, invoicing and video billing, violation processing, and collection and court processing services, relating to Riverlink.  (_Id._ ¶ 17.[9])  Like Kapsch, Gila's compensation under its

---

[5] A copy of this Agreement is attached as <u>Exhibit C</u> to the Kashcheyeva Declaration ("Kapsch Agreement"), and is also available publicly at: https://www.in.gov/ifa/files/Executed%20Toll%20Services%20Agreement%20between%20IFA%20and%20the%20Toll%20Services%20Provider.pdf (last accessed Apr. 6, 2019).  As the Agreement explains (at p. 1 & ¶¶ A-C), the Indiana Finance Authority was authorized to enter into that Agreement with Kapsch by resolution of the LSIORB Joint Board, which was in turn authorized by the States of Indiana and Kentucky to act on their behalf in implementing joint toll operations for the LSIORB Project.  This Agreement has been incorporated by reference into the Complaint. (Compl. ¶ 16.)  The Court may consider "documents that are central to the complaint and are referred to in it," regardless of whether the documents are attached to the complaint.  _Williamson v. Curran_, 714 F.3d 432, 436 (7th Cir. 2013).

[6] _See_ Kapsch Agr., §§ 12.1-12.2, 12.5 & Exhibit C thereto.

[7] _See_ Kapsch Agr., § 2.2.14.3 & Exhibit A thereto (definition of "Gross Revenues").

[8] _See_ Kapsch Agr., §§ 5.1-5.2 & Exhibit O thereto, § 4.02.

[9] A copy of the Subcontract between Kapsch and Gila is included with this Motion.  (Decl. of Raquel Pulido, ¶ 4 & <u>Exhibit A</u> (hereafter, the "Gila Subcontract").)  The Gila Subcontract is incorporated in the Complaint by reference (_see_ Compl. ¶ 17), and can therefore be considered by this Court in ruling on a motion to dismiss.  _Venture Assocs. Corp. v. Zenith Data Sys. Corp._, 987 F.2d 429, 431 (7th Cir. 1993); _Anastos v. Honeywell Int'l, Inc._, No. 3:10-CV-208-TLS, 2010 WL 3526265, at *2 (N.D. Ind. Sept. 3, 2010) (holding that it is appropriate to consider multiple contracts, even if not explicitly referenced in the complaint, when they relate to a referenced agreement and constitute

6

Subcontract is strictly limited to a fixed fee, which represents "full and complete compensation for the performance of the Scope of Work in accordance with the Implementation Schedule and Responsibility Matrix."[10]  As part of its contract with Kapsch, Gila agreed that "the obligations of [Kapsch] pursuant to the [Prime] Contract with respect to Subcontractor's Scope of Work under this Subcontract Agreement shall be transferred entirely to the Subcontractor."[11]

## III.    Plaintiff's Allegations Regarding "Incurred" Fees and Missing Notices

Plaintiff does not explain whether she had a prepaid RiverLink account and a transponder. (Compl. ¶¶ 20-24.)  Plaintiff merely alleges that, with respect to four bridge crossings in 2017, she received two separate 2nd Toll Notices, each of which included an administrative fee of $5.00, without ever having received a 1st Toll Notice.  (Compl. ¶¶ 20-23.)

Notably, each 2nd Toll Notice sent to Plaintiff contained the breakdown of applicable fees and penalties and the schedule for when they get assessed, and advised Plaintiff regarding her right to dispute any and all tolls listed in the Invoice, as follows:

| PAY YOUR TOLLS ON TIME AND SAVE MONEY | | Failure to pay will result in escalations as depicted in the example below. | |
|---|---|---|---|
| **Notification Process** | **Description** | **Time To Pay** | **Total Fees** |
| 1st Toll Invoice | Tolls | 30 Days | None |
| 2nd Toll Invoice | Tolls + Fees (Administrative $5.00) | 30 Days | $5.00 |
| Violation Notice | Tolls + Fees (Administrative $5.00) + (Violation $25.00) | 30 Days | $30.00 |
| Collections Notice | Tolls + Fees (Administrative $5.00) + (Violation $25.00) + (Collections + $30.00) | 30 Days | $60.00 |

*Nonpayment of the total amount due may result in Additional Fees, a Vehicle Registration Hold and/or submittal of debt to a Collections Agency.*

**Toll Disputes**
You may dispute any or all tolls listed under the Financial Transaction Summary section of this Invoice. Any tolls not disputed must be paid by the due date on this Invoice. Information pertaining to the dispute process and dispute eligibility can be obtained online at www.RiverLink.com or by calling 1-855-748-5465.

---

a core of the contracting parties' relationship); *see also Minch v. City of Chicago*, 486 F.3d 294, 300, n.3 (7th Cir. 2007) (holding that it is appropriate to consider a contract not referenced in the complaint on a motion to dismiss when it is central to plaintiff's claims).

[10] *See* Gila Subcontract, §§ 10.1, 10.5 & Schedule F.

[11] *Id.*, § 4.1.2.

(Declaration of Raquel Pulido (hereafter, the "Pulido Decl."), ¶¶ 6-7 & Exs. B and C thereto.)[12]

Nowhere in the Complaint does Plaintiff allege that she actually ***paid*** or ***was required to pay*** an administrative fee of $5.00 associated with either of the two 2ⁿᵈ Toll Notices.  To the contrary, Plaintiff did not pay ***any administrative fees at all*** for the Toll Notices at issue, as any such fees were fully waived or credited (and even the underlying tolls were reduced to the lowest available rates) when Plaintiff opened a prepaid RiverLink account in February 2018.  (Pulido Decl. ¶¶ 7-8 & Exs. D and E thereto.)[13]  Plaintiff does not allege that she received any other Notices for any other crossings, or was ever actually assessed any charges or penalties.

Plaintiff purports to represent a class of "[a]ll individuals who were assessed, charged, invoiced, requested to pay, or did in fact pay an administrative fee or penalty, relating to tolls assessed to that individual for use of the RiverLink Toll Bridges, without first being provided notice of any unpaid toll via a 1ˢᵗ Toll Notice."  (Compl. ¶ 30.)[14]

---

[12] Once again, the Complaint expressly references the invoices, which go to the core of Plaintiff's claims here (at ¶¶ 20-21).  The Court therefore can consider these invoices without converting the Motion into one for summary judgment.  *See Venture Assocs. Corp.*, 987 F.2d at 431.

[13] The Pulido Declaration can be considered in connection with Defendants' Motion to Dismiss to the extent it makes a factual challenge to Plaintiff's standing.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (factual attack to subject matter jurisdiction allows court to consider evidence beyond the pleadings); *Tellis v. Sipes*, No. 4:12-CV-00007-SEB, 2012 WL 1969054, at *4 (S.D. Ind. May 31, 2012) (when considering a motion that launches a factual attack against jurisdiction, the court may look beyond the complaint and consider "*whatever evidence* has been submitted on the issue") (emphasis in original); *Gradeless v. Am. Mut. Share Ins. Corp.*, No. 1:10-CV-0086-TWP-DML, 2011 WL 1107093, at *1 (S.D. Ind. Mar. 23, 2011) (attaching extrinsic evidence to factual 12(b)(1) motion to dismiss is appropriate).

[14] On its face, this proposed class definition is not limited to residents of the State of Indiana.  This Court does not have personal jurisdiction over claims of out-of-state putative class members.  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S.Ct.1773 (2017); *Practice Mgmt. Supp. Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 860-62 (N.D. Ill. Mar. 12, 2018).  However, as this Court concluded, "dismissal of absent class members' claims for lack of personal jurisdiction would be premature prior to a motion for class certification."  *Weiss v. Grand Campus Living, Inc.*, No. 118CV00434JRSTAB, 2019 WL 1261405, at *2 (S.D. Ind. Mar. 19, 2019) (Sweeney, J.).  Accordingly, Defendants reserve a personal jurisdiction challenge vis-à-vis out-of-state putative class members until the class certification stage (if the case survives until that point).

## ARGUMENT

**I.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) for Plaintiff's Lack of Standing.**

Federal Rule of Civil Procedure 12(b)(1) is the proper procedural mechanism to challenge a Plaintiff's lack of standing to assert a claim. *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 738 (7th Cir. 2009). "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2099) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing requires plaintiffs to "alleg[e] such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf." *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1650 (2017). To withstand a motion to dismiss for lack of standing, a plaintiff must plead sufficient plausible facts to demonstrate: (1) an injury-in-fact; (2) causal relationship between the claimed injury and the challenged conduct, and (3) redressability of the claimed injury. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017).

When seeking to assert standing on behalf of third parties, a plaintiff must also "identify [a] member . . . who ha[s] suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Class action claims are not immune from this rule: "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). A class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 594-95 (1997); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (finding that each named plaintiff in a class action "must allege and show that they personally have been injured, not

9

that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

Here, Plaintiff lacks standing to complain of administrative fees that she was allegedly (initially) assessed, but does not (and cannot) allege to have ultimately paid. In the absence of any allegations that Plaintiff actually paid and is out of pocket the administrative fees at issue, the Complaint, on its face, does not satisfy Plaintiff's standing requirements. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) (requiring "sufficient factual allegations of an injury resulting from defendants' conduct" to state a plausible claim for relief); *Allgire v. HOVG, LLC*, No. 1:16-CV-981-WTL-DKL, 2017 WL 1021394, at *4 (S.D. Ind. Mar. 16, 2017) (granting motion to dismiss based on facial standing challenge where plaintiff failed to offer factual support "for his assertion that he suffered financial loss as a result of the Defendant's actions").

Moreover, even if the Complaint's allegations appeared facially sufficient (and, here, they plainly do not), the actual facts of the case confirm that there is a fundamental lack of standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (distinguishing between factual and facial challenge to standing). As explained in the Pulido Declaration (at ¶¶ 7-8 & Exhibits D-E), Plaintiff's fees were waived and/or credited in full some 14 months ago, well before this litigation commenced. Even assuming Plaintiff did not receive a 1st Toll Notice for either of the crossings at issue, she ultimately was not out of pocket *any* administrative fees related to such crossings, and any related administrative fees were long ago canceled and/or credited. (Pulido Decl. ¶¶ 7-8.)

While Plaintiff also purports to request injunctive relief, she offers no non-conclusory facts supporting any reasonable possibility that she will sustain future injury resulting from any actions by Defendants. Past exposure to alleged conduct "does not in itself show a present case for

injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Camasta v. Jos. A. Bank Clothiers, Inc*., No. 12 C 7782, 2013 WL 474509, at \*6-7 (N.D. Ill. Feb. 7, 2013) (holding that plaintiff alleging injury from deceptive advertising "ha[d] alleged that [defendant] harmed him in the past, which is not sufficient to establish standing for injunctive relief"). Plaintiff also requests the Court to order a "corrective advertising campaign" to prevent further consumer "deception." Of course, even were Plaintiff deceived (and she could not have been), she cannot credibly claim that any type of an "advertising campaign" is necessary to assist her in preventing future reliance on the invoices.

In short, Plaintiff cannot point to any actual injury-in-fact by virtue of Defendants' alleged conduct. *See Parm v. Nat'l Bank of Cal., N.A.*, No. 4:14-CV-0320-HLM , 2015 WL 11605748 at \*17 (N.D. Ga May 20, 2015), *aff'd*, 835 F.3d 1331 (11th Cir. 2016) (no standing from outstanding debt because lender charged off the loan and would not be undertaking further collection efforts); *Ross v. Albany Med. Ctr.*, 916 F. Supp. 196, 200 (N.D.N.Y.), *aff'd*, 104 F.3d 351 (2d Cir. 1996) (no injury-in-fact exists where plaintiff is not obligated to make the payment that has already been forgiven); *Owen v. Regence BlueCross BlueShield of Utah*, 388 F. Supp. 2d 1318, 1326 (D. Utah 2005) (no standing where entity to whom amount was allegedly owed stated that its records showed zero-balance and it had no intention to collect any debt). The Court should accordingly dismiss this action based upon Plaintiff's complete lack of standing. *See Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996).[15]

---

[15] This Court should simply dismiss the action, rather than entertain any remand, as remand would plainly be futile. *Porch-Clark v. Engelhart*, 930 F. Supp. 2d 928, 936 (N.D. Ill. 2013), *aff'd* (Dec. 10, 2013) (ordering dismissal rather than remand because state court was also without jurisdiction to hear case for same reason as federal court). Indiana courts emphasize that, "[s]tanding is a fundamental, threshold, constitutional issue that must be addressed by this, or any, court to determine if it should exercise jurisdiction in the particular case before it." *Alexander v. PSB Lending Corp*., 800 N.E.2d 984, 989 (Ind. Ct. App. 2003). And, Indiana courts have found federal limits on justiciability to be instructive. *Id.* (citing *Schultz v. Indiana*, 731 N.E.2d 1041, 1044 (Ind. Ct. App. 2000)). Thus, Indiana law, just like federal, requires a plaintiff to demonstrate "a personal stake in the outcome of the lawsuit and must show that he has sustained or was in immediate danger of sustaining some direct injury as a result of the conduct at issue." *Schultz*,

11

**II.      The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiffs Have Not – and Cannot – State a Claim Against Defendants.**

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must set forth facts that raise a "plausible inference" that the defendant inflicted a legally cognizable harm upon the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a court must disregard "formulaic recitation of the elements of a cause of action"). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The factual allegations in the complaint must be sufficient "to raise a right to relief above the speculative level," such that the claim is "plausible on its face." *Twombly*, 550 U.S. at 555, 570. The court "need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014).

When a plaintiff alleges fraud or mistake, as Plaintiff does here, "she must also clear the additional hurdle of stating all such averments with particularity." *Schott v. Huntington Nat'l Bank*, 914 F. Supp. 2d 933, 937 (S.D. Ind. 2012). This heightened pleading standard imposed by Fed. R. Civ. P. 9(b) requires that "facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)).

When this Court strips away Plaintiff's unsupported legal and factual conclusions, as well as facts controverted by the documents underlying Plaintiff's claims, it is obvious that Plaintiff has

---

731 N.E.2d at 1044.  As explained above, this Plaintiff cannot do, regardless of forum.  Moreover, actual damages (which Plaintiff plainly cannot allege) are a requisite element of every cause of action in this case.  Thus, regardless of standing doctrine, each of Plaintiff's claims fails as a matter of law.

"not nudged [her] claims across the line from conceivable to plausible [and consequently], [her] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

### A. Plaintiff's Unjust Enrichment and Money Had and Received Claims Warrant Dismissal.

Count I in Plaintiff's Complaint attempts to state a claim of unjust enrichment based on the premise that Defendants were unjustly enriched by retaining the benefit of "amounts paid for penalties and/or administrative fees assessed or invoiced to Plaintiff and members of the putative Class." (Compl. ¶¶ 40-42.)  Count II in Plaintiff's Complaint seeks to assert a cause of action for money had and received on the same grounds.  (Compl. ¶¶ 45-48.)  Both of these claims fail because Plaintiff does not satisfy a number of required elements.

To plead a claim for unjust enrichment under Indiana law, a plaintiff must establish that "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."  *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009).  Indiana courts articulate three elements for this claim: "(1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment."  *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167–68 (Ind. Ct. App. 2012) (citing *Woodruff v. Ind. Family & Social Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012)).  To bring a "money had and received" claim, the plaintiff must satisfy three similar requirements: (1) defendant receives money, (2) from the plaintiff, (3) under such circumstances that in equity and conscience ought not be retained by the defendants.  *Lawson v. First Union Mortg. Co.*, 786 N.E.2d 279, 283–84 (Ind. Ct. App. 2003).  The two common denominators between these claims—the payment of money by Plaintiff and retention of money by Defendants—are both missing from Plaintiff's Complaint.

13

***First***, Plaintiff fails to allege that she conferred any benefit on Defendants.  Nowhere in her entire 87-paragraph Complaint does Plaintiff allege that she actually paid the administrative fees at issue—only that she was initially "assessed" them.  (Compl. ¶¶ 20-24.)  Because Plaintiff did not pay any fees, she attempts to mask this deficiency by alleging that it was "Plaintiff ***and Class members***" who paid the administrative fees.  (*See*, *e.g.*, Compl. ¶¶ 36-37, 40, 45, 48.)  Plaintiff's allegations are deficient.  She ***individually*** must demonstrate all elements of the claim, and cannot hide behind collective, vague assertions that purported class members were injured in discharging this individual burden.  *Spears v. Metro. Life Ins. Co.*, No. 2:07-CV-88 JVB, 2009 WL 2408928, at *15 (N.D. Ind. Aug. 4, 2009) (dismissing unjust enrichment claim in a class action based on named plaintiffs' conclusory allegations relating to defendant's charging excessive fees).

***Second***, Plaintiff cannot adequately allege that either of the Defendants <u>*retained*</u> any administrative fines.  Although Plaintiff alleges, again in conclusory terms parroting the elements of the cause of action, that Defendants "received the money" and were conferred a "benefit" (Compl. ¶¶ 37, 41, 45), the relevant contracts confirm that the entirety of toll revenues, including the administrative fees at issue, went to the States of Kentucky and Indiana, and were not retained by either Kapsch or Gila.  (*See* discussion *supra* at Factual Background, Section II; *see also* Development Agr., §§ 1.39, 1.56, 1.92, 11.8.1; Kapsch Agr., § § 2.2.14.3 & Exhibit A.)  As such, Plaintiff's Complaint cannot establish a benefit conferred upon Defendants by Plaintiff, further requiring dismissal of Plaintiff's claims in Counts I and II.  *See Crissen v. Gupta*, 994 F. Supp. 2d 937, 955 (S.D. Ind. 2014) (dismissing money had and received claim when plaintiff failed to allege that defendant received money that it was not owed); *Carter v. HSBC Mortg. Servs., Inc.*, No. 115CV01938TWPMPB, 2016 WL 5121984, at *5 (S.D. Ind. Sept. 21, 2016) (dismissing unjust

enrichment claim when plaintiff only alleged loss but no benefit conferred on defendant); *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995) (same).[16]

**B.      Plaintiff's Fraud-Related Claims (Fraud, Violation of the IDCSA, Deception/Intentional Misrepresentation, And Constructive Fraud) Warrant Dismissal.**

Plaintiff asserts four claims that sound in fraud: fraud, violation of the IDCSA, deception/intentional misrepresentation, and constructive fraud. These claims warrant dismissal for multiple reasons, including because Plaintiff has not alleged any fraud claim with particularity and because Plaintiff did not plead facts to establish either justifiable reliance on any conduct by Defendants or any actual damages actually suffered by Plaintiff.

**1.      *Plaintiff Fails to Allege Fraud with Particularity.***

Rule 9(b) requires that Plaintiff provide more than just a "general sense" of the alleged fraud, but rather plead fraud with *particularity*. Under this heightened pleading standard, the plaintiff must allege the who, what, where, and when of the alleged fraud. *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Moreover, claims of fraud must sufficiently allege fraudulent intent on the part of the defendant. *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991). These stringent pleading requirements are put in place to ensure that "the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman*, 172 F.3d

---

[16] Although not the basis for this Motion to Dismiss, there is another reason Plaintiff's equitable claims fail: Plaintiff entered into the express contract with the Joint Board when she opened a RiverLink account. At that point, she became subject to the RiverLink Account Terms and Conditions, which govern Plaintiff's use of any or all of the all-electronic toll system facilities for the LSIORB Project (available at: https://riverlink.com/wp-content/uploads/2017/02/LSIORB_TermsAndConditions_20170214.pdf). Where there is a contract addressing the subject, claims of unjust enrichment and money had and received must be dismissed. *See McVay v. Store House Co.*, No. 116CV00644SEBMJD, 2016 WL 9461331, at *6 (S.D. Ind. Oct. 24, 2016) (Dinsmore, J.) (dismissing unjust enrichment claim when express contract on the same issue existed); *Shelby Eng'g Co. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026, 1028 (Ind. Ct. App. 1999) ("There is no question that the existence of an express contract precludes recovery on the equitable theory of money had and received.").

at 469; *see also Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) ("The purpose of this particularity requirement is to discourage a sue first, ask questions later philosophy.").

The Rule 9(b) standard applies to all claims that rely upon averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). This naturally includes claims for common law fraud (Count III) and deception / intentional misrepresentation (Count V). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (a claim that "sounds in fraud—in other words, one that is premised upon a course of fraudulent conduct" implicates Rule 9(b)'s heightened pleading requirements). But particularity requirements also apply to claims of constructive fraud, *see Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 680 (N.D. Ind. 2010), and Plaintiff's claim under the IDCSA in Count IV.[17]

In describing the alleged misrepresentation in the various fraud-related counts, Plaintiff relies on a handful of conclusory statements relating to her receipt of a 2nd Toll Notice:

> 47.    . . . Defendants misrepresented whether such 1st Toll Notice had been sent by identifying an invoice that purported to be the "2nd Toll Notice" and deceived Plaintiff and the other putative Class members as to whether they had been provided notice (when they had not).

---

[17] To establish liability under the IDCSA, "there must either be compliance with the notice requirements [*i.e*., plaintiff must provide a written notice stating fully the nature of the alleged deceptive act and an opportunity to cure under Ind. Code § 24-5-0.5-5(a)] coupled with proof that the act is 'uncured' *or proof that the act is 'incurable*.'" *Lehman v. Shroyer*, 721 N.E.2d 365, 368 (Ind. Ct. App. 1999) (emphasis added). Plaintiff does not, and cannot, allege any non-conclusory facts regarding having provided written notice and the opportunity to cure to Defendants. Rather, Plaintiff seems to proceed on the basis of an incurable deceptive act for which notice is not necessary. (Compl. ¶ 59.) An incurable deceptive act under the IDCSA is an "act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." *Lehman*, 721 N.E.2d at 368. The heightened pleading standard under Rule 9(b) applies to pleading an incurable deceptive act under the IDCSA. *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998); *see also SMC Corp. v. Peoplesoft USA Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, *5 (S.D. Ind. Oct. 12, 2004) (dismissing IDCSA claim for failure to meet particularity requirements of Rule 9(b)); *Munch v. Sears Roebuck & Co*., Nos. 06 C 7023, 07 C 0412, 2007 WL 2461660, *3 n.7 (N.D. Ill. Aug. 27, 2007) ("[P]laintiffs fail to plead with sufficient particularity alleged misrepresentations made by [defendant], and thus, they provide no basis to sustain plaintiffs' [IDCSA] claim.").

> 51.     Defendant made numerous material representations of past or existing fact that were false, including statements regarding whether prior notice of tolls had been provided to Plaintiff and other Class members as set forth above in greater detail.
>
> 52.     Defendant made these false material representations of past or existing fact with knowledge or reckless ignorance of their falsity.
>
> 53.     Plaintiff and the Class members each relied upon the false materials representation of fact by Defendant, and this reliance proximately caused injury to Plaintiff and the Class members in the amounts paid for administrative penalties and fees that were unjustified and wrongfully asserted.
>
> 59.     Defendants' deceptive acts were willfully done by Defendants as part of a scheme, artifice, or device with intend [sic] to defraud and mislead Plaintiff and the Class members, and thus constitute incurable deceptive acts as set forth under Indiana law.

(Compl. ¶¶ 47, 51-53, 59; *see also* Compl. ¶¶ 65-67, 83.)

Plaintiff's Complaint does not come close to meeting the Rule 9(b) standard. ***First***, Plaintiff fails to describe an actual misrepresentation. Notably, the 2nd Toll Notices Plaintiff received do not state that Plaintiff was provided the 1st Toll Notice or when; they simply assess a $5.00 administrative fee. (*See* Pulido Decl. ¶¶ 5-6 & Exs. B and C thereto.) The alleged misrepresentation therefore appears to consist of the implication that the 1st Toll Notice must have been provided to Plaintiff—because the 2nd Toll Notice was called "2nd." This type of "implicit representation" is not actionable under the IDCSA at all. *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 598 (Ind. App. Ct. 2002) (holding that implicit representations do not fit within the definition of deceptive acts under IDCSA and dismissing claim based on implicit representation).

Equally important, the Notices advise Plaintiff that a $5.00 fee only applies if Plaintiff receives, but does not pay, the 1st Toll Notice within 30 days and, further, actually allows Plaintiff to dispute any or all charges listed in the invoices:

17

| PAY YOUR TOLLS ON TIME AND SAVE MONEY | | Failure to pay will result in escalations as depicted in the example below. | |
|---|---|---|---|
| **Notification Process** | **Description** | **Time To Pay** | **Total Fees** |
| 1st Toll Invoice | Tolls | 30 Days | None |
| 2nd Toll Invoice | Tolls + Fees (Administrative $5.00) | 30 Days | $5.00 |
| Violation Notice | Tolls + Fees (Administrative $5.00) + (Violation $25.00) | 30 Days | $30.00 |
| Collections Notice | Tolls + Fees (Administrative $5.00) + (Violation $25.00) + (Collections + $30.00) | 30 Days | $60.00 |

*Nonpayment of the total amount due may result in Additional **Fees**, a **Vehicle Registration Hold** and/or submittal of debt to a **Collections Agency**.*

**Toll Disputes**
You may dispute any or all tolls listed under the Financial Transaction Summary section of this Invoice. Any tolls not disputed must be paid by the due date on this Invoice. Information pertaining to the dispute process and dispute eligibility can be obtained online at www.RiverLink.com or by calling 1-855-748-5465.

(*Id.*)  Considered as a whole, the 2nd Toll Notice does not contain any false representation.  *Hughes v. Chattem, Inc*., 818 F. Supp. 2d 1112, 1121 (S.D. Ind. 2011) (no deception where the website "exhorts each consumer to consider that [the product] may not be the right supplement for his or her needs").[18]  And although Plaintiff alleges that Defendant made "numerous" misrepresentations of past or existing fact, the Complaint fails to describe any such misrepresentations, instead simply pointing to the statements in the 2nd Toll Notice (which do not support any such charge).

*Second*, Plaintiff fails to identify **which Defendant** (let alone which specific employee) made any alleged misrepresentation; instead making collective, in-the-aggregate references to "Defendants" or "Defendant" (without specifying which one) throughout the Complaint.  (*See, e.g.*, Compl. ¶ 28 ("**Defendants'** false, misleading and deceptive invoicing system"); ¶ 32 ("**Defendants'** representations discussed above are misleading"); ¶ 60 ("**Defendants'** deceptive acts") (emphases added).)  The Seventh Circuit has been clear that "in a case involving multiple defendants, . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (simply referring to "defendants" falls short of the standards set forth in Rule

---

[18] With respect to Plaintiff's claim under the IDCSA in particular, the alleged "deceptive act" does not fit any of the 37 categories and examples of deceptive acts listed in the statute.  Ind. Code § 24-5-0.5-3(b)(1)-(37); *see also* Ind. Code § 24-5-0.5-10 (listing more examples of deceptive acts).  The statement at issue is not the type of a "deceptive act" covered by the IDCSA.

9(b)).[19]  Nor does the Complaint set forth any facts sufficient to suggest that it was any of the Defendants at all—as opposed to, for example, a third-party vendor or the State Entities themselves—who "made" the alleged statement contained in a standard, pre-approved form correspondence sent to many of the motorists using the RiverLink system.  The Seventh Circuit requires that the Complaint identify the specific speaker(s) who made the supposed misrepresentations.[20]  Plaintiff has clearly not done that here, and the Complaint's deficiencies in pleading the "who" (just like the "what") of the alleged "fraud" are fatal to Plaintiff's fraud claims.

**Third**, the Complaint fails to assert any facts to suggest that the statements in the 2nd Toll Notice were made with intent to deceive, or even recklessly.  Even though under Rule 9(b), a party may allege malice or intent generally, the case law clearly demonstrates that "pleading scienter requires more than a simple allegation that a defendant possessed an intent to defraud." *Bell & Howell Fin. Servs. Co. v. St. Louis Pre-Sort, Inc*., No. 97 C 6063, 1999 WL 35316, at \*3 (N.D. Ill. Jan. 11, 1999).  The Complaint "must still afford a basis for believing that plaintiffs could prove scienter," and meet the plausibility standard set by Rule 8 as described in *Twombly* and *Iqbal*. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007);

---

[19] *See also Cornielsen*, 916 F.3d at 598 (pleading that "Defendants" made various misrepresentations is insufficient, and rejecting the "group pleading" doctrine); *Kruse v. GS Pep Tech. Fund 2000 LP*, 897 F. Supp. 2d 769, 779 (N.D. Ind. 2012) (dismissing fraud claim when plaintiffs failed to identify *which* of the defendants made the fraudulent representations); *Design Time, Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ind. 1987) (a "complaint that attributes misrepresentations to all defendants, 'lumped' together for pleading purposes, generally is insufficient."); *Weddle v. Smith & Nephew, Inc*., No. 14 C 09549, 2016 WL 1407634, at \*2 (N.D. Ill. Apr. 11, 2016) (claims against three defendants not plausible where plaintiff alleged fracture of one defendant's component "and/or" defects in each of the other defendants' components).

[20] *Ello v. Brinton*, No. 2:14-CV-299-TLS, 2015 WL 2340754, at \*6 (N.D. Ind. May 13, 2015) (to satisfy Rule 9(b), plaintiff must state "the identity of the person who made the misrepresentation" and dismissing claim for failure to do so); *Schafer v. Jeld Wen Doors/IWP Custom Door Div.*, No. 2:07-CV-163-TLS, 2007 WL 3407659, at \*4 (N.D. Ind. Nov. 9, 2007) (dismissing fraud claim when complaint did not attempt to assign identity to speaker of alleged misrepresentations); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (dismissing fraud claim when complaint only points to corporate entity, but does not identify the individual who made the alleged representations); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998) (dismissing fraud claim as alleged because there can be no corporate fraud without identifying the individual architect behind it).

*Parrot v. Family Dollar, Inc.*, No. 17 C 222, 2018 WL 2118195 (N.D. Ill. 2018).  In addition, as explained above, *see* n.15, an incurable deceptive act under the IDCSA must specifically be pled with particularity.  *McKinney*, 693 N.E.2d at 71.

Plaintiff fails to offer any facts to plausibly suggest that any of the Defendants (assuming, for a moment, that any of them were involved in sending notices) were even aware of any purported failure to send a 1st Toll Notice to Plaintiff at the time they mailed out the 2nd Notice—let alone that they withheld any notice willfully or intentionally.  Plaintiff's allegations are quintessentially conclusory, and devoid of any facts.  (Compl. ¶¶ 27 ("Upon information and belief,[21] Defendants have inappropriately charged motorists penalties as part of a scheme with the intent to defraud and mislead"); ¶ 52 ("Defendant made these false material representations of past or existing fact with knowledge or reckless ignorance of their falsity."); ¶ 59 ("Defendants' deceptive acts were willfully done by Defendants as part of a scheme, artifice, or device with intend [*sic*] to defraud and mislead Plaintiff. . ."); ¶¶ 65-66 ("Defendants knowingly or intentionally made false or misleading written statements to Plaintiff," and these statements were made "with the intent to obtain property belonging to Plaintiff").  Even the pleading requirement under Rule 8(a) requires "more than labels and conclusions"; and importantly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Twombly*, 550 U.S. at 553.  Yet, conclusory assertions are all Plaintiff has offered to this Court.

In fact, willful intent on the part of Defendants is not even plausible here because, as explained above, *see supra* Factual Background, Section II, Defendants do not ***retain*** any administrative fees.  All such fees go entirely to the States of Kentucky and Indiana, providing

---

[21] In the Seventh Circuit, "allegations made upon information and belief are insufficient in pleading fraud, . . . unless the plaintiff states the grounds for his suspicions."  *Uni\*Quality, Inc.*, 974 F.2d at 924.  The Complaint in this case clearly does not set forth any such grounds.

Defendants no incentive whatsoever to try to deceive Plaintiff.  Moreover, the suggestion of *scienter* on Defendants' part is further belied by the reality that the 2nd Toll Notice Plaintiff admits to having received clearly providing Plaintiff with the payment schedule, directly explaining that a $5.00 administrative fee only applies after Plaintiff does not pay a 1st Toll Notice received, and further inviting motorists to appeal any charges on the notice to the extent they disagree.

In addition, for purposes of her "incurable deceptive practice" claim under the IDCSA, Plaintiff "must prove not only that a deceptive act was committed but also that it was done as part of a scheme, artifice or device with the intent to defraud or mislead." *McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980).  Plaintiff generically asserts, upon information and belief, that "Defendants' [*sic*] have inappropriately charged motorists penalties as part of a scheme with intent to defraud and mislead."  (Compl. ¶ 27.)  If the Rule 9(b) pleading standard means anything, it is that Plaintiff cannot rely on this type of conclusory, formulaic recitation of the element of the cause of action to meet her pleading burden.  *Jones v. Bridgepoint Educ., Inc.*, No. 1:16-CV-338, 2017 WL 2438461, at *4 (N.D. Ind. June 5, 2017) (dismissing IDCSA claim for failure to meet Rule 9(b) burden with respect to pleading an incurable deceptive act); *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641, at *5 (S.D. Ind. Oct. 12, 2004) (same).

Because Plaintiff's Complaint fails to plead facts supporting a plausible claim that both Defendants acted with the intent to deceive, Plaintiff's claims in Counts III-V and VII of the Complaint should be dismissed.  *Grace Vill. Health Care Facilities, Inc. v. Lancaster Pollard & Co.*, 896 F. Supp. 2d 757, 763–64 (N.D. Ind. 2012) (dismissing fraud claim because the complaint fails to plead facts supporting a plausible claim that the defendant acted with the intent to deceive); *see also Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (affirming dismissal

21

of fraud claim where "the amended complaint as a whole provides no grounds for believing the plaintiffs could prove scienter").

**2.** *Plaintiff Fails to Allege Reasonable Reliance on Alleged Misstatements.*

To adequately state her fraud-based claims, Plaintiff must also plead that she reasonably relied on the alleged misrepresentation. *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995), *decision clarified on denial of reh'g*, 664 N.E.2d 394 (Ind. Ct. App. 1996) (listing reasonable reliance as an element of fraud claim); *Doe v. Howe Military Sch*., 227 F.3d 981, 991 (7th Cir. 2000) (listing "reliance on the deceptive statements or omissions by the complaining party" as an element of constructive misrepresentation claim); *Jones*, 2017 WL 2438461, at *4 (referencing reliance on deceptive act to plaintiff's detriment as an element of an IDCSA claim). Plaintiff's Complaint fails to plausibly plead justifiable reliance. Ultimately, whether Plaintiff received a 1st Toll Notice or not is a fact uniquely within Plaintiff's own knowledge. Indeed, even if someone sent the notice to Plaintiff, the sender may still not be in the best position to know if Plaintiff actually ***received*** it. Because Plaintiff is in the same, if not better, position to know whether she received the 1st Toll Notice, Plaintiff could not justifiably rely on any statements or implications in the 2nd Toll Notice. *In re Julian*, No. 12-7394-RLM-7, 2013 WL 625346, at *5 (Bankr. S.D. Ind. Feb. 20, 2013) (dismissing misrepresentation claim for lack of reasonable reliance where deficiencies "were not hidden from the [debtors], they observed them, and continued to write checks"); *Plymale v. Upright*, 419 N.E.2d 756, 768 (Ind. Ct. App. 1981) (reliance is not justifiable as a matter of law when "the plaintiffs knew as much about the facts of the underlying transaction" as did the person making the misrepresentation); *Peterson Indus., Inc. v. Lake View Tr. & Sav. Bank*, 584 F.2d 166, 169 (7th Cir. 1978) (no justifiable reliance on information in letter when plaintiff could evaluate representation for itself; applying Illinois law).

### 3. *Plaintiff Fails to Allege Damages.*

Another critical element of Plaintiff's fraud-based claims is an actual injury suffered by Plaintiff. *Skinner*, 829 F. Supp. 2d 669, 680 (constructive fraud requires injury to the complaining party); *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005) (damages/injury are a required element of both fraud and constructive fraud claims); *Jones*, 2017 WL 2438461, at *2 ("To bring a claim for an uncured deceptive act under IDCSA, a plaintiff must provide . . . a complete description of the actual damage suffered. . . .") As discussed above, *see* Parts I and II.A, Plaintiff does not allege having paid ***any*** administrative fees, or having sustained any other pecuniary (or non-pecuniary) damages. Plaintiff's fraud-related claims therefore also fail on this independent basis.

### 4. *Plaintiff's Constructive Fraud Claim Suffers From Additional Defects Requiring Dismissal.*

In addition to its failure to meet the Rule 9(b) threshold or satisfy the reasonable reliance and injury elements of the claim, Plaintiff's constructive fraud claim also fails to establish a duty that is required to state such a claim. *Doe v. Howe Military Sch.*, 227 F.3d 981, 991 (7th Cir. 2000) ("The elements of constructive fraud under Indiana law [include] a duty existing by virtue of the relationship between the parties.").

Plaintiff has not pointed to any "special relationship" between Plaintiff and Defendants. *Skinner*, 829 F. Supp. 2d at 680. Normally, the "special relationship" is a fiduciary or confidential one between the parties. *Doe*, 227 F.3d at 991; *see also Mudd v. Ford Motor Co.*, 178 F. App'x 545, 547 (7th Cir. 2006). In support of its constructive fraud claim, Plaintiff simply states that Defendants owed Plaintiff "a duty to their relationship as the TSP for the Toll Bridges and as the sole party" with the ability to confirm whether toll notices had been sent out. (Compl. ¶ 82.) But Plaintiff is equally, if not better, equipped to confirm whether she received the 1st Toll Notice.

23

Without some suggestion that one party possesses "knowledge not possessed by the other," the constructive fraud claim must be dismissed. *Skinner,* 829 F. Supp. 2d at 681; *see also Town & Country Homecenter of Crawfordsville, Indiana, Inc. v. Woods*, 725 N.E.2d 1006, 1011 (Ind. Ct. App. 2000) (dismissing constructive fraud claim when there was no relationship between plaintiff and defendant); *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-CV-00205, 2011 WL 1107114, at *9 (S.D. Ind. Mar. 23, 2011) (dismissing constructive fraud claim when plaintiff did not plead facts to give rise to fiduciary relationship between plaintiff and defendant), *aff'd sub nom. Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013). The absence of any special relationship between the parties therefore separately warrants dismissal of Plaintiff's constructive fraud claim.

### C.   Plaintiff's Negligence Claim Warrants Dismissal.

For her remaining claim of negligence (Count VI), Plaintiff alleges that Defendants made misleading statements regarding the mailing of a 1st Notice "without reasonable grounds for believing that the false and misleading representations were true." (Compl. ¶ 74.) Plaintiff's negligence claim should be dismissed under Rule 12(b)(6) for several reasons—including because there was no actual "misrepresentation," as discussed *supra* pp. 17-19. In addition, and as a threshold infirmity, the claim is foreclosed by the straightforward application of the economic loss doctrine. Furthermore, Plaintiff's Complaint fails to allege a duty of care on Defendants' part, or any injury to Plaintiff proximately caused by the alleged breach of any such duty. *Yost*, 3 N.E.3d at 515 (noting that an action for negligence has three elements: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty").

**1.** *Plaintiff's Claim Is Foreclosed by The Economic Loss Doctrine.*

Plaintiff's negligence claim is barred by the economic loss doctrine. Under the Indiana law, "a defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)—but . . . a defendant is liable under a tort theory for a plaintiff's losses if a defective product or service causes personal injury or damage to property other than the product or service itself." *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C*., 929 N.E.2d 722, 729 (Ind. 2010). Here, Plaintiff's Complaint does not allege that Plaintiff paid any fees or suffered any damages at all—not even pecuniary. But even assuming, for the sake of the argument, that Plaintiff had sustained any damages, they would have been entirely pecuniary in nature, unaccompanied by any property damage or personal injury. With the exception of a few circumstances not applicable here—such as lawyer malpractice, breach of duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misrepresentation—there can be no liability in tort for pure economic losses. *SelectSun GMBH v. Porter, Inc.*, No. 1:14-CV-215, 2017 WL 1178732, at *10 (N.D. Ind. Mar. 30, 2017).

An exception to the economic loss doctrine potentially relevant here is negligent misrepresentation (*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 745-46 (Ind. 2010) (holding that negligent misrepresentation is an exception to the economic loss doctrine)), as Plaintiff does attempt to predicate her negligence claim on Defendants' purported "false and misleading representations." (Compl. ¶ 74.) However, Indiana courts only recognize the tort of negligent misrepresentation in limited circumstances involving the employer-employee context or in a professional setting involving brokers, attorneys, abstractors, and surveyors, or other

professionals "whose primary function is to render actionable professional opinion."[22]  This case does not fit within any of these categories – Plaintiff is not an employee of any of the Defendants and Defendants are not professionals whose primary function is to render professional opinions. At most, Defendants are commercial entities providing services to State Entities building and operating roadways for use by motorists.  As the Seventh Circuit recently held in applying Indiana law, a special duty does not apply to a "commercial supplier, positioned in the middle between an upstream producer of raw materials and a downstream manufacturer."  *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 788 (7th Cir. 2015) (rejecting negligent misrepresentation claim against the corporate representative of a merchant in an ordinary dispute between a seller and a buyer of goods).  Extending the tort of negligent misrepresentation to a relationship between the provider of tolling services and consumers would, in fact, be unprecedented.  *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 1:13-CV-00133-RLY, 2014 WL 6750042, at *7 (S.D. Ind. Dec. 1, 2014) (dismissing negligent misrepresentation claims where defendant's relationship with plaintiffs "was one of salesperson-customer and support staff-customer").[23]  The economic loss doctrine is fatal to Plaintiff's claim of negligence.

---

[22] *Darst v. Illinois Farmers Ins. Co*., 716 N.E.2d 579, 584 (Ind. Ct. App. 1999) (holding that Indiana courts have recognized a tort of negligent misrepresentation in a limited factual setting dealing with employer-employee relationship and declining to extend the tort to insurance context); *Gonzalez v. ADT LLC*, 161 F. Supp. 3d 648, 659 (N.D. Ind. 2016) ("Indiana state law recognizes a tort for negligent misrepresentation only in limited employer-employee relationships."); *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc*., No. 117CV00949LJMDML, 2017 WL 4123050, at *9 (S.D. Ind. Sept. 18, 2017) (holding that professionals – such as brokers, attorneys, abstractors, and surveyors – may owe a negligence duty to a third party with whom they have no contractual relationship, but only if they have "actual knowledge that such third persons will rely on [their] professional opinion"); *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 629 (Ind. Ct. App. 1983) (defining a professional as "one whose primary function is to render actionable professional opinions").

[23] Even if Plaintiff were able to avoid the economic loss doctrine, she still could not state a claim.  In order to state a claim for  negligent misrepresentation, the plaintiff would have to meet four elements: (1) the defendant, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions; (2) the defendant fails to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relies upon the information supplied by the defendant; and (4) the plaintiff suffers pecuniary loss as a result.  *U.S. Bank*, 929 N.E.2d at 747.  As discussed above, Part II.B.2, *supra*, Plaintiff cannot demonstrate either justifiable reliance or any pecuniary loss resulting from the alleged misrepresentation.  The Complaint does not allege that Plaintiff paid any fees.  And

### 2.    *Plaintiff's Claim Fails to Allege Facts Giving Rise to Tort Duty, or Suggesting That Plaintiff Was Actually Injured.*

As a separate hurdle, Plaintiff fails to adequately allege that Defendants owed a duty of care to Plaintiff.  The Complaint alleges, in vague and conclusory terms, that "Defendants had a duty to use care when invoicing Plaintiff . . . in accordance with the notice and fee provisions required of Defendants by applicable law and Defendants' contracts."  (Compl. ¶ 73.)  However, the Complaint fails to identify what specific "applicable law" or any actual provision "Defendants' contracts" that could purportedly support or give rise to this actionable duty.  *Ryan v. TCI Architects/Engineers/Contractors, Inc*., 72 N.E.3d 908, 914 (Ind. 2017) (holding that actionable negligence may be predicated on a contractual duty only where "a contract affirmatively evinces an intent to assume a duty of care"); *Walker v. Martin*, 887 N.E.2d 125, 136 (Ind. Ct. App. 2008) (finding no duty of care because in examining the contract, "there is no indication that [defendant] intended to assume . . . even a general duty of care").  Thus, the Complaint does not allege facts sufficient to support that Defendants owed any such tort duty of care towards Plaintiff.

Plaintiff attempts to shore up her duty of care allegations by arguing that Defendants committed "negligence *per se* through violation of state statutes and regulations including those governing Defendants' ability to assess fees and/or penalties as a [toll service provider] for the Toll Bridges as well as Indiana's Deceptive Consumer Sales Act."  (Compl. ¶ 77.)  But under Indiana law, "a plaintiff cannot rely on the doctrine of negligence *per se* to satisfy the duty element of a negligence claim."  *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544–45 (Ind. Ct. App. 2018).  In other words, a negligence-per-se defendant "must be under a duty to use reasonable

---

Plaintiff could not justifiably rely on any implied statements in the 2nd Toll Notice because the information regarding the receipt of notices is equally in Plaintiff's own possession.  Thus, even if this claim were not barred by the economic loss doctrine, Plaintiff still could not establish the required elements of this claim.

care; if he is not, violation of the statute cannot prove breach of duty." *Id.* at 544.  As discussed above, Plaintiff has not sufficiently alleged the existence of any tort duty.

Further, under the doctrine of negligence *per se*, the unexcused violation of a statute or ordinance constitutes negligence *per se* if the provision "(1) protect[s] the class of persons in which the plaintiff is included and (2) protect[s] against the type of harm which has occurred as a result of the violation."  *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (quotation marks omitted).  Once again, Plaintiff fails to cite to any actual statute or regulation that Defendants purportedly violated, making it impossible to evaluate the precise obligations imposed by said statutes or regulations and whether they are, for example, intended to protect individuals like Plaintiff.  *See, e.g.*, *Brown v. City of Valparaiso*, 67 N.E.3d 652, 659 (Ind. Ct. App. 2016) (dismissing negligence *per se* claim because the statute upon which plaintiff relied was designed to protect the public in general and contained a comprehensive enforcement scheme).  In addition, as explained above, Plaintiff failed to adequately state her claim under the IDCSA, so a violation of this statute cannot possibly serve as a predicate for Plaintiff's negligence-per-se claim.

Finally, as discussed above, Plaintiff has not alleged any actual damages resulting from Defendants' alleged conduct.  For all of these reasons, Plaintiff's negligence claim must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety and without leave to amend.

Dated:  April 11, 2019                          Respectfully submitted,

By:  /s/ Irina Kashcheyeva                  By:  /s/ Darren A. Craig

Robert H. Griffith (admitted *pro hac vice*)
Jonathan W. Garlough, #30329-45
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-5702
Facsimile: (312) 832-4700
Email: jgarlough@foley.com
        rgriffith@foley.com

Irina Kashcheyeva (admitted *pro hac vice*)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: 313-234-7170
Facsimile: 313-234-2800
ikashcheyeva@foley.com

Attorneys for Defendant Gila, LLC

Darren A. Craig, #25534-49
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
Telephone:    (317) 237-3800
Facsimile:    (317) 237-3900
Email:        dcraig@fbtlaw.com

Attorneys for Defendant Kapsch Trafficcom USA, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2019, a copy of the foregoing document was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<div style="margin-left:40%">

/s/ Irina Kashcheyeva
Irina Kashcheyeva
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: 313-234-7170
Facsimile: 313-234-2800
ikashcheyeva@foley.com

</div>