UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA BARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-00987-TWP-MJD |
| ) | |
| KAPSCH TRAFFICCOM USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' motion to dismiss. [Dkt. 39.] District Judge Tanya Walton Pratt has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 60.] For the reasons set forth below, the Magistrate Judge recommends that Defendants' motion be **DENIED** to the extent that it seeks dismissal for lack of subject matter jurisdiction, but that Defendants' alternative motion to dismiss for failure to state a claim be **GRANTED**.

**I. BACKGROUND**

Plaintiff alleges the following facts in her Amended Complaint.

When drivers use certain bridges to travel between Indiana and Kentucky across the Ohio River, they are charged a toll. The toll is collected by means of the RiverLink system, which is

administered by Defendants.[1] The RiverLink system does not utilize toll booths; rather, vehicles are identified by either a transponder in the vehicle that is linked to a prepaid account or by cameras that capture the vehicle's license plate. In the latter situation, Defendants are authorized to send an invoice ("First Toll Notice") to the registered owner of the vehicle to collect the toll. If payment is not made within thirty days of receipt of the First Toll Notice, Defendants are authorized to send a Second Toll Notice that includes a $5.00 administrative fee in addition to the unpaid toll. If payment is not made within thirty days of receipt of the Second Toll Notice, Defendants are authorized to send a Violation Notice that includes the unpaid toll, a $5.00 administrative fee, and an additional $25.00 penalty. If payment is not made within thirty days of receipt of the Violation Notice, Defendants are authorized to send a Collection Notice that includes the unpaid toll, a $5.00 administrative fee, an additional $25.00 penalty, and an additional $30 collections penalty. If the Collection Notice is not paid, "additional fees may then be assessed, collections efforts (including litigation) may be taken, and [Defendants] can also direct that a hold be placed on the motorist's vehicle registration with the IN BMV and/or KY MVL that will not be lifted until the toll and fees/penalties are paid." [Dkt. 35 at 3.]

     Plaintiff received a Second Toll Notice that was dated August 19, 2017, that assessed tolls for bridge crossings on June 29, 2017, and June 30, 2017, along with a $5.00 administrative fee. Plaintiff later received a Second Toll Notice that was dated January 16, 2018, that assessed tolls for bridge crossings on September 4, 2017, and November 26, 2017, along with a $5.00 administrative fee.

---

[1] The Court recognizes that Defendants object to Plaintiff failing to distinguish between their respective roles; however, as that distinction is not relevant to the issue of standing, the Court will refer to them collectively as well.

2

Plaintiff's claims in the Second Amended Complaint arise out of the fact that she did not receive a First Toll Notice regarding these bridge crossings before receiving a Second Toll Notice and being assessed a $5.00 administrative fee.  In her Amended Complaint, Plaintiff asserts that she "paid the penalties/fees contained in the '2nd Toll Notices' to avoid additional penalties and fees that would otherwise be assessed and that included even the placement of a Vehicle Registration Hold on Plaintiff's vehicle(s) at the BMV and actions by a collections agency against Plaintiff," and that "Defendants have failed to refund Plaintiff for the unlawful charges described herein as required by the LSIORB Business Rules."[2]  *Id.* at 6.  Plaintiff alleges that Defendants' "failure to send 1st Toll Notices before 2nd Toll Notices, Violation Notices, and/or Collection Notices is widespread and affects a large portion of motorists using the RiverLink system."  *Id.*  She asserts the following claims on behalf of herself and a putative class of similarly situated individuals:  (1) unjust enrichment; (2) money had and received; (3) fraud; (4) violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-0.1 et seq.; (5) deception or Intentional Misrepresentation; (6) negligence; (7) constructive fraud; and (8) breach of fiduciary duty.

## II. STANDING

Defendants seek dismissal of Plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and on the merits pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the Court may not consider the merits until determining whether it has subject matter jurisdiction over this case, the Court addresses the former first.

---

[2] The Amended Complaint does not elaborate on the nature or content of these rules.  "LSIORB" is an acronym for "Louisville Southern Indiana Ohio River Bridges."

3

See *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 821 (7th Cir. 2016) ("It is certainly true that a court may not decide the merits of a case without subject matter jurisdiction . . . .") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *United States v. Cook County*, 167 F.3d 381, 387 (7th Cir. 1999)).

### A. Applicable Standard

Defendants seek dismissal of this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because, they argue, Plaintiff Melissa Barker lacks standing to pursue her claims. To establish Article III standing, Plaintiff "must show that (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of [Defendants]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000)). The party invoking federal jurisdiction—here, Plaintiff—bears the burden of establishing the elements of Article III standing.[3] *Id.*

### B. Discussion

The first step in resolving the Defendants' motion to dismiss for lack of subject matter jurisdiction is determining whether a factual or facial challenge has been raised. "A factual challenge contends that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient." *Id.* (emphasis in original) (internal citations and quotation marks omitted).

---

[3] The Court notes that the posture of this case is a bit unusual, in that Defendants initially invoked federal jurisdiction by removing this case from state court. However, it is now Plaintiff who argues that federal jurisdiction exists, while Defendants argue that it does not.

4

Here, Defendants' motion is premised on their assertion that Plaintiff has received a full refund of the alleged improper fees. As noted above, Plaintiff asserts in her Amended Complaint that Defendants "have failed to refund Plaintiff for the unlawful charges described herein as required by the LSIORB Business Rules." [Dkt. 35 at 6.] Thus, Defendants make a factual challenge.

"On a factual challenge to a plaintiff's standing, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Indeed, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Pollack v. U.S. Dep't Of Justice*, 577 F.3d 736, 745 (7th Cir. 2009) (internal citations and quotation marks omitted). "[T]he plaintiff bears the burden of proving standing by a preponderance of the evidence." *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017) (citation omitted). Thus, the Court will consider the relevant evidence submitted by the parties in resolving the standing issue.

Defendants have submitted the declaration of Raquel Pulido that states, in relevant part:

> 7. RiverLink offers a special program for motorists who open a RiverLink prepaid account. Pursuant to this program, certain individuals who received an invoice and sign up for a prepaid account may qualify to have tolls owed lowered and any administrative fees (including the $5.00 2nd Toll Notice fee) waived or credited in full.
>
> 8. On February 26, 2018, Plaintiff Melissa Barker enrolled in the prepaid RiverLink account program. As a result, although Ms. Barker initially paid the $5.00 administrative fee associated with the August 19, 2017, 2nd Toll Notice (in relation to her use of the toll bridges on June 29 and June 30, 2017), that administrative fee was reversed and credited back to Plaintiff's prepaid RiverLink account of February 26, 2018. In addition, the underlying tolls were reduced to the lowest available rates, and likewise credited back to Plaintiff's prepaid RiverLink account on February 26, 2018. Per Ms. Barker's instructions, the fees, including the $5.00 administrative fee, were

5

> reversed and returned to Ms. Barker in the form of a credit on her RiverLink prepaid account, which she is free to use (or request in the form of a check) at any time. Had Ms. Barker not requested the fees to be credited to her prepaid RiverLink account, they would have been returned to her in the form of a check. Since then, Ms. Barker has used some of the funds available on her RiverLink prepaid account. A copy of the statement showing that Plaintiff's administrative fees for the August 19, 2017, 2nd Toll Notice were reversed and credited to Plaintiff is attached as Exhibit D hereto.
>
> 9. In addition, as a result [of] Ms. Barker's enrollment in the prepaid RiverLink account program, all of the administrative fees associated with the 2nd Toll Notice dated January 16, 2018 in relation to her use of the toll bridges on September 4, 2017 and November 26, 2017 have been waived, and the underlying tolls were reduced to the lowest available rates. Ms. Barker never made a payment of any tolls or administrative fees related to the January 16, 2018 2nd Toll Notice. A copy of the statement showing that Plaintiff's administrative fees for this Tool Notice were reversed and waived is attached as Exhibit E hereto.
>
> 10. In sum, Ms. Barker did not end up paying the $5.00 administrative fee associated with either of the two Toll Notices at Exhibits B and C to my Declaration, as these fees were fully waived or credited to Plaintiff.

[Dkt. 39-2 at 2-3.] In response, Plaintiff has submitted her own affidavit, which reads, in relevant part:

> 4. From the best that I can tell after reviewing records produced by Defendants in this litigation, as well as my own bank records (which I have already produced to Defendants), I have been assessed fees or penalties by Defendants in 2nd Toll Notices and/or later notices (such as a Violation Notice) on at least four different occasions, including four different "2nd Toll Notices" that Defendants' records identify as respectively being dated 5/31/2017, 7/10/2017, 8/19/2017, and 1/16/18, and a "Violation Notice" that Defendants' records identify as being dated 8/4/2017. (See, e.g., GILA-BARKER-000135.)

[Dkt. 92-2 at 1-2.] However, with regard to the fees she actually paid to Defendants, Plaintiff states only that she paid the Second Toll Notice dated July 10, 2017, using a check, *id.* at 2, and Plaintiff does not dispute that the $5.00 administrative fee associated with that Notice was

refunded to her RiverLink account. She also states that "[a]ll told, in July and August, 2017, I paid at least $80 to Riverlink, including via check for $17 and three debit card charges in the amounts of $38.00, $12.00, and $13.00." *Id.* at 4. However, while she states in her brief that "most" of this $80 "was for fees and penalties," [Dkt. 92 at 11], her affidavit does not support that statement. Nor does her affidavit state that she actually paid **any** fees or penalties that were not credited back to her prior to the filing of this lawsuit. Plaintiff, therefore, provides no evidence that she paid any administrative fees that have not been refunded to her. Accordingly, the evidence of record is undisputed that, prior to the filing of this lawsuit, Defendants had refunded—by means of crediting Plaintiff's RiverLink account—all of the allegedly improper administrative fees Plaintiff paid. Further, to the extent Plaintiff draws a distinction between receiving a refund and receiving a credit in her RiverLink account, Plaintiff does not dispute Defendants' unequivocal statement that she could have received the balance of her RiverLink account as a refund check at any time.

Defendants argue that Plaintiff has no standing to sue for the alleged improper fee assessments because, to the extent that she paid them, they were refunded and "[c]ourts have consistently dismissed claims for a lack of factual standing when the plaintiff received reimbursement for the improper charge alleged." [Dkt. 39-1 at 22]⁴

---

⁴ The Court notes that some of Defendants' citations in support of this statement are not entirely accurate. Defendants cite *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016), as "holding that a plaintiff bringing a state-law consumer claim lacked Article III standing because the money had been refunded"; in fact, it was the district court that reached that conclusion in that case, and that holding was not challenged on appeal. The circuit court addressed only whether the case should have been remanded to state court or dismissed. Defendants describe the holding in *Arabian Am. Oil Co. v. Scarfone,* 713 F. Supp. 1420, 1423 (M.D. Fla. 1989), as "no injury found to support Article III standing where the plaintiff received reimbursement for all of the overcharges"; in fact, that case did not involve Article III standing at all, but rather

7

In response, Plaintiff advances two bases for standing aside from the refunded administrative fees: (1) the time value of her money; and (2) the personal time Plaintiff lost "due to Defendants' wrongful conduct, including hours and hours of time spent on the phone, sending emails and correspondence, and using the internet, in an attempt to address and resolve the issues caused by Defendants' wrongful invoicing practices," [Dkt. 92 at 12], and due to the fact that "when these issues continued to occur, Plaintiff also started to affirmatively avoid using the Riverlink toll bridges when traveling to Alabama to visit her daughter (a practice that she continues to this day)." *Id.* at 5-6. The Seventh Circuit has expressly found that these types of economic harms constitute the type of particularized injury necessary for standing. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 ("The plaintiffs have standing because "unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective"); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) (time and effort resolving fraudulent charges on debit card constituted injury, even though charges were stopped by the bank before they went through). So too, here, Plaintiff has presented evidence that Defendants' allegedly improper billing practices caused her to pay them an administrative fee and thus temporarily lose the use of that money, which constituted an injury to her, even though it was eventually credited back to her. In addition, she has presented evidence that she spent time and effort to "set things straight" in

---

whether the plaintiff suffered the injury required by the civil RICO statute, 18 U.S.C. § 1964(c). Finally, the Defendants' "see also" citation to *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), is curious, inasmuch as the existence of refunds in that case did not inform the Court's analysis of standing and, in any event, the Seventh Circuit found that standing existed.

order to obtain the credit and to avoid having to pay additional administrative fees and penalties that she alleges she should never have been assessed. [Dkt. 92-2 at 3] ("I have spent dozens of hours of my time attempting to address and resolve the fact that I was being charged penalties and fees for failing to pay tolls for which I had never been provided notice, or the opportunity to pay, without such penalties and fees via a 1st Toll Notice. My efforts included calls to Riverlink (using the number provided on the Notice), correspondence and calls with the State Representatives representing Jeffersonville (where Riverlink's office was located) and my own district in Hamilton County, calls to the Indiana Governor's office and DOT, calls, letters, and emails with the Attorney General's Office, and a large amount of time researching the Riverlink toll issues online and in an attempt at finding a way to pay tolls online and without incurring additional fees or penalties."). Accordingly, the Court finds that Seventh Circuit precedent dictates a finding that Plaintiff has standing in this case.

### III. DISMISSAL ON THE MERITS

Defendants also argue that Plaintiff cannot, as a matter of Indiana law, recover the types damages she identifies to support her standing argument. Defendants frame this argument in terms of redressability, which seems reasonable enough—if the applicable law does not permit an award of damages based on the type of injury suffered by the Plaintiff, one could logically argue that such an injury is not redressable. However, the Seventh Circuit implicitly rejected that argument in *Dieffenbach*, treating the issue of whether the alleged injuries were compensable as a matter of state law not as an issue of standing, but as a basis for judgment as a matter of law. *See Dieffenbach*, 887 F.3d at 828 ("[A] district court could grant judgment on the pleadings, see Fed. R. Civ. P. 12(c), if none of the plaintiffs' injuries is compensable, as a matter of law, under the statutes on which they rely. We therefore turn to state law.").

In this case, Plaintiff has failed to point to any authority under Indiana law that would allow her to recover for her lost personal time, and the authority cited by Defendants supports the contrary finding. As the court in *In re Gen. Motors LLC Ignition Switch Litig.* aptly noted,

> most states do not treat lost personal time as a compensable form of injury. *See* Leonard E. Gross, *Time and Tide Wait for No Man: Should Lost Personal Time Be Compensable?*, 33 Rutgers L.J. 683, 684-85 (2002) (noting that historically courts have been "loath to award damages for lost personal time in breach of contract cases and in cases involving tortious interference with personal property"). The unwillingness to award damages for lost personal time may in part be a legacy of an era when personal time was not valued as highly as it is today, *see id.* at 684, but the role of a federal court sitting in diversity is to determine what state law is, not to change it.

339 F. Supp. 3d 262, 307 (S.D.N.Y. 2018); *see also In re Laskaratos*, 605 B.R. 282, 310 (Bankr. E.D.N.Y. 2019) ("[W]hile a debtor's out-of-pocket expenses to restore a disheveled situation to good order, such as wages paid to workers, may be an element of compensatory damages, the law does not recognize a debtor's own efforts to do so as an element of a compensatory damages claim."). The Southern District of New York went on to determine that Indiana follows this majority view. *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d at 314 (citing *Wickens v. Shell Oil Co.*, 2006 WL 3254544, at *11 (S.D. Ind. Nov. 9, 2006) (applying Indiana law and finding "[t]here is no authority entitling Plaintiffs to receive as damages an award to compensate them for the personal time they devoted to this matter")). Thus, while the Seventh Circuit in *Dieffenbach* found that California law would permit recovery for such an injury, the Court finds that Indiana law would not.

Nor does the Court believe that Indiana law would permit Plaintiff to recover for the loss of use of the $5.00 she paid to cover the allegedly improper administrative fee from the time she paid it (sometime after July 10, 2017) to the time it was credited back to her (February 26, 2018). First, the Plaintiff has not pled or otherwise presented any facts to suggest that she suffered **any**

10

economic harm from the loss of use of that money—either because she would have used the money for something else or earned interest on it. Indeed, any amount of interest would have been miniscule, and while the Seventh Circuit found that "a trifling loss suffices under California law," *Dieffenbach*, 887 F.3d at 829, the Court finds that Indiana law instead prescribes to the maxim "*de minimis non curat lex* ('the law does not redress trifles')." *See Kieffer v. Trockman*, 56 N.E.3d 27, 35 (Ind. Ct. App. 2016) (citing *D & M Healthcare, Inc. v. Kernan*, 800 N.E.2d 898, 901 (Ind. 2003)).

In addition, the Court notes that, in "any civil action arising out of tortious conduct," Indiana's Tort Prejudgment Interest Statute, Ind. Code § 34-51-4-1, *et seq.*, provides the circumstances under which a prevailing party may recover for the time value of money. *See Simon Prop. Grp., L.P. v. Brandt Const., Inc.*, 830 N.E.2d 981, 994 (Ind. Ct. App. 2005) ("'The purpose of the Tort Prejudgment Interest Statute is to encourage settlement and to compensate the plaintiff for the lost time value of money.'") (quoting *Johnson v. Eldridge,* 799 N.E.2d 29, 33 (Ind. Ct. App. 2003)). The Indiana Court of Appeals has held that "in passing this statute the legislature intended to preempt common law prejudgment interest in tort cases," because "[t]o hold otherwise would be to render the statute and its requirements virtually meaningless—a party who failed to fulfill the statute's requirements could merely turn to the common law for relief." *Id.* To permit Plaintiff to recover the lost time value of money as an element of tort damages when such recovery would not be available to her under the statute would have the same effect.

Plaintiff has offered no authority that suggests that Indiana law would permit her to recover for her lost personal time or the lost time value of her money under any of the legal theories she advances in this case. For the reasons set forth above, the Court finds that it would

11

not.  Accordingly, the Court finds that the only injuries asserted by Plaintiff in this case are not compensable under Indiana law, and therefore her claims must be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' motion to dismiss for lack of subject matter jurisdiction be **DENIED** and Defendants' motion to dismiss for failure to state a claim be **GRANTED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  14 JAN 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.