## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA BARKER an individual, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 1:19-cv-00987-TWP-MJD |
| | ) | |
| KAPSCH TRAFFICCOM USA, INC., and GILA, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| INDIANA DEPARTMENT OF TRANSPORTATION, | ) ) | |
| | ) | |
| Miscellaneous. | ) | |

## ENTRY ON PENDING MOTIONS

This matter is before the Court on three pending motions: Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Rules 12(b)(1) and 12(b)(6) (Filing No. 39), Plaintiff's Objection to Report and Recommendations of the Magistrate Judge on her Motion to Dismiss (Filing No. 148), and the Petitioners' Objection to Magistrate Judge's Order on Motion to Intervene (Filing No. 195). The motions are related only insofar as affirmance of the Magistrate Judge's recommendations on both issues would result in dismissal of both Complaints, necessitating final judgment in this matter.

Plaintiff Melissa Barker ("Barker") Plaintiff has filed this putative class action in relation to Defendants' liability as toll service providers for the Riverlink Toll Bridges in Southern Indiana. Specifically, Plaintiff alleges that Defendants Kapsch Trafficcom USA, Inc. ("Kapsch") and Gila, LLC ("Gila") (collectively, "Defendants"), the administrators of the operative toll collection

system, failed to give her proper statutorily-required First Notice of delinquency to drivers crossing the Riverlink toll bridges, and in doing so have charged and collected administrative fees and penalties that are unlawful.  Barker alleges eight claims against Defendants in her Amended Complaint, including unjust enrichment and fraud.  (Filing No. 35.)  Defendants moved to dismiss the Amended Complaint arguing both that Barker lacked standing to sue and that her Amended Complaint failed to state a claim against Defendants.  The Court referred the Motion to Dismiss to the Magistrate Judge, (Filing No. 60), who recommended that the Court deny the Motion under Rule 12(b)(1) but grant it under Rule 12(b)(6) for failure to state a claim.  (Filing No. 131.)

Following that Report and Recommendation, Barker objected.  (Filing No. 148.) Separately, Robert Ardaiolo ("Ardaiolo") and Monique Outzen ("Outzen") (together the "Intervenor-Plaintiffs") moved to intervene and filed a class action Complaint alleging the same eight claims that Barker alleged in her Amended Complaint.  (Filing No. 137; Filing No. 140; Filing No. 141.) Defendants filed briefs in response to both Barker's objection, (Filing No. 166), and the Intervenor-Plaintiffs' Motion to Intervene (Filing No. 179).  The Magistrate Judge denied the Motion to Intervene on the grounds that it would unduly delay adjudication of this case and that the Intervenor-Plaintiffs suffered no prejudice from denial.  (Filing No. 190.)  The Intervenor-Plaintiffs objected to that ruling, (Filing No. 195), and their objection—construed by the Court as an appeal—has been fully briefed.  (Filing No. 201; Filing No. 204.)

For the reasons set forth below, the Court **sustains in part and overrules in part** Barker's Objection to the Report and Recommendation.  The Court **denies** Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6).  And the Court **denies** the Intervenor-Plaintiffs' Appeal of the Magistrate Judge's Denial of the Motion to Intervene.

## I.     BACKGROUND

**A.     Allegations in the Amended Complaint**

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Barker as the non-movant.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).  Barker alleges the following in her Amended Complaint.  (Filing No. 35.)

When drivers use certain bridges to travel between Indiana and Kentucky across the Ohio River, they are charged a toll.  The toll is collected by means of the RiverLink system, which is operated and administered by a Toll Services Provider ("TSP").  Defendants are responsible for the actions of the TSP.  (Filing No. 35 at 4-5, ¶¶ 17-24.)  The RiverLink System does not utilize toll booths; rather, vehicles are identified by either a transponder inside the vehicle that is linked to a prepaid account or by cameras that capture the vehicle's license plate.  In the latter situation, TSP is authorized to send an invoice ("First Toll Notice") to the registered owner of the vehicle to collect the toll.  If payment is not made within thirty days of receipt of the First Toll Notice, TSP is authorized to send a Second Toll Notice that includes a $5.00 administrative fee in addition to the unpaid toll.  If payment is not made within thirty days of receipt of the Second Toll Notice, TSP sends a Violation Notice that includes the unpaid toll, a $5.00 administrative fee, and an additional $25.00 penalty.  If payment is not made within thirty days of receipt of the Violation Notice, TSP sends a Collection Notice that includes the unpaid toll, a $5.00 administrative fee, an additional $25.00 penalty, and an additional $30.00 collections penalty.  If the Collection Notice is not paid, "additional fees may then be assessed, collections efforts (including litigation) may be taken, and [Defendants] can also direct that a hold be placed on the motorist's vehicle registration

with the IN BMV and/or KY MVL that will not be lifted until the toll and fees/penalties are paid."
([Filing No. 35 at 3](#).)

Barker received a Second Toll Notice dated August 19, 2017, that assessed tolls for bridge crossings on June 29, 2017 and June 30, 2018, along with a $5.00 administrative fee.  She later received a Second Toll Notice that was dated January 16, 2018, that assessed tolls for bridge crossings on September 4, 2017 and November 26, 2017, along with a $5.00 administrative fee. Barker did not receive a First Toll Notice regarding these bridge crossings before receiving a Second Toll Notice and being assessed a $5.00 administrative fee.  Thus, barker was assessed fees and/or penalties without any notice of a toll being due or an opportunity to pay that toll prior to assessment of the fees and/or penalty.

Barker asserts that she "paid the penalties/fees contained in the '2nd Toll Notices' to avoid additional penalties and fees that would otherwise be assessed and that included even the placement of a Vehicle Registration Hold on Plaintiff's vehicle(s) at the BMV and actions by a collections agency against Plaintiff," and that "Defendants have failed to refund Plaintiff for the unlawful charges described herein as required by the LSIORB Business Rules."[1]  *Id.* at 6.  Barker alleges that Defendants' "failure to send 1st Toll Notices before 2nd Toll Notices, Violation Notices, and/or Collection Notices is widespread and affects a large portion of motorists using the RiverLink system." *Id.*  She asserts the claims on behalf of herself and a putative class of similarly situated individuals. Count I: Unjust Enrichment; Count II: Money Had and Received; Count III: Fraud; Count IV: Violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-0.1 *et seq.*; Count V: Deception or Intentional Misrepresentation; Count VI: Negligence; Count VII: Constructive Fraud; and Count VIII: Breach of Fiduciary Duty.

---

[1] The Amended Complaint does not elaborate on the nature or content of these rules. "LSIORB" is an acronym for "Louisville Southern Indiana Ohio River Bridges."

4

B.     **Procedural History**

Defendants moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and

12(b)(6).  (Filing No. 39.)  They first argued that Barker lacked standing to sue because she had

not paid any fees that were not ultimately refunded to her RiverLink account.  The Magistrate

Judge agreed with this assertion of fact, stating,

> Plaintiff, therefore, provides no evidence that she paid any administrative fees that
> have not been refunded to her. Accordingly, the evidence of record is undisputed
> that, prior to the filing of this lawsuit, Defendants had refunded—by means of
> crediting Plaintiff's RiverLink account—all of the allegedly improper
> administrative fees Plaintiff paid.

(Filing No. 131 at 7.)  Nevertheless, the Magistrate Judge determined Barker had standing to sue

because she had suffered two injuries: (1) the loss of the time value of the money she paid to satisfy

the administrative fees, and (2) the loss of personal time she spent dealing with the Defendants to

obtain her refund and avoid having to pay additional fees.  *Id.* at 8-9.  The Magistrate Judge

accordingly recommended denial as to Defendants' 12(b)(1) motion. However, the Magistrate

Judge determined that Barker cannot recover damages for either of these injuries under Indiana

law, and thus recommended granting Defendants' 12(b)(6) motion.

Barker and her counsel used a two-pronged strategy to attack the Magistrate Judge's

unfavorable Report and Recommendation.  They first attacked the Report and Recommendation

directly by filing an objection.  (Filing No. 148.)  Barker's objection asserts four legal arguments

on why the Report and Recommendation is contrary to law and this Court should not adopt it.  In

the second prong of the strategy, Barker's counsel filed a Motion to Intervene and an Intervenor

Complaint on behalf of two putative class members, Ardaiolo and Outzen.  The Intervenor

Complaint alleged the same eight claims against the same two defendants on the same grounds as

Barker's Amended Complaint. The Defendants opposed the Motion to Intervene, and the

Magistrate Judge denied it.  (Filing No. 190.) The Magistrate Judge noted in his Order that counsel filed the Motion to Intervene as an attempt to rescue the putative class' claims should the Court adopt his Report and Recommendation on the 12(b)(6) motion.  *Id.* at 2.  The Intervenor-Plaintiffs filed an objection under Fed. R. Civ. P. 72(a) to the Magistrate Judge's Order denying their motion to intervene.  As a matter of semantics, the Court construes the Intervenor-Plaintiffs' "objection" as  an appeal, because it emanates from a ruling, rather than a recommendation, of the Magistrate Judge.

Three motions are ripe for the Court's consideration. The Motion to Dismiss is only related to the Motion to Intervene inasmuch as an adoption of the Magistrate Judge's position on both matters would result in dismissal of the case and final judgment. Thus, the Court conducts independent analysis of the Motion to Dismiss, the Objection to the Magistrate Judge's Report and Recommendation, and the appeal of  his ruling on the Motion to Intervene. All three pending motions are resolved in this Order.

## II.    LEGAL STANDARDS

### A.    Dismissal Under Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a claim should be dismissed if the federal court lacks jurisdiction over the subject matter of the claim.  *See Hay v. Ind. State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002) ("[j]urisdiction is the power to declare law, and without it the federal courts cannot proceed.").  A court ruling on a Rule 12(b)(1) motion to dismiss must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993).  However, where a party raises a factual question concerning jurisdiction, the district court is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction." *Grafon Corp. v. Hauserman,*

602 F.2d 781, 783 (7th Cir. 1979).   In such circumstances, the district court may properly look

beyond the jurisdictional allegations of the complaint and view whatever evidence has been

submitted to determine whether subject matter jurisdiction exists.   *Id*.   The burden of proof to

demonstrate subject matter jurisdiction is on the party asserting jurisdiction.   *United Phosphorus,*

*Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003).

**B.**      **Dismissal Under Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint

that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations

in the complaint and draws all inferences in favor of the plaintiff.   *Bielanski*, 550 F.3d at 633.

However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions

of fact."   *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the United

States Supreme Court explained that the complaint must allege facts that are "enough to raise a

right to relief above the speculative level."  550 U.S. 544, 555 (2007).  Although "detailed factual

allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the

elements of a cause of action" are insufficient.  *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581

F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of

a claim without factual support").  The allegations must "give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Stated differently,

the complaint must include "enough facts to state a claim to relief that is plausible on its face."

*Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).

To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**C.**     **Report and Recommendation Fed. R. Civ. P. 72(b)**

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3)). After a magistrate judge makes a report and recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions. 28 U.S.C. § 636(b)(1). Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

**D.**     **Order Denying Motion to Intervene**

Fed. R. Civ. P. 72(a) states:

When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy…. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

After reviewing objections to a magistrate judge's order, the district court will modify or set aside the order only if it is clearly erroneous or contrary to law.  The clear error standard is highly deferential, permitting reversal only when the district court "is left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

## III.   DISCUSSION

The Court will first address the Magistrate Judge's Report and Recommendation, as a full adoption of it would obviate the need for analysis of the Motion to Dismiss.  Thereafter, the Court will move on to the Motion to Dismiss and the Motion to Intervene.

**A.**   **Objection to the Magistrate's Report and Recommendation (Filing No. 148)**

**1.**   **The Report and Recommendation**

The Magistrate Judge first considered Defendants' 12(b)(1) motion, which argued that Barker's Amended Complaint did not plead any injury, and thus the Court did not have subject matter jurisdiction to hear it.  (Filing No. 131 at 4.)  The Magistrate Judge determined that motion was "premised on [the Defendants'] assertion that Plaintiff has received a full refund of the alleged improper fees."  *Id.* at 5.  The Amended Complaint itself states that Defendants "have failed to refund Plaintiff for the unlawful charges described herein."  (Filing No. 35 at 6.)  The Magistrate Judge looked beyond the Amended Complaint to the record evidence to resolve this dispute,[2] by considering an affidavit submitted by Raquel Pulido ("Pulido"), an account manager at Gila, which swore that Barker received a refund for the administrative fees she paid.  Weighing Pulido's

---

[2] To examine the evidence in the record, the Magistrate Judge relied on *Pollack v. U.S. Dep't. of Justice*, 577 F.3d 736, 745 (7th Cir. 2009). In that case, the Seventh Circuit said, "[o]n a factual challenge to a plaintiff's standing, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Indeed, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

affidavit against Barker's affidavit, the Magistrate Judge determined that Barker has *in fact* been refunded all the administrative fees that she alleges were improperly charged to her.  (Filing No. 131 at 7.)   Notwithstanding, the Magistrate Judge determined that Barker's claims that she sustained damages in the form of (1) the lost time value of money of the fees she paid that were ultimately refunded and (2) the lost time she spent on haranguing Defendants into refunding her money. *Id.* at 8-9. On this basis, the Magistrate Judge determined the Court has subject matter jurisdiction to hear this case and recommended denial of Defendants' 12(b)(1) motion.

However, the Magistrate Judge recommended dismissal on the merits, stating that, "Plaintiff has offered no authority which suggests that Indiana law would permit her to recover for her lost personal time or the lost time value of money under any of the legal theories she advances in this case." *Id.* at 11.  The Magistrate Judge carried over the factual findings he made while resolving the 12(b)(1) motion to his analysis of the 12(b)(6) issue, and thus only looked into whether Indiana Law would allow recovery for the two categories of damages addressed above. The Report and Recommendation did not address whether Indiana Law would allow Barker to recover the actual money she spent to pay fees that were improperly assessed to her.

### 2.    **The Objection**

In her Objection, Barker argues that "The Report and Recommendation dismisses the Amended Complaint based on evidence outside the pleadings without converting the motion into one for summary judgment." (Filing No. 148 at 22.)  Barker argues that on a 12(b)(6) motion the Court must accept as true the allegation in her Amended Complaint that "Defendants have failed to refund Plaintiff for the unlawful charges described herein." (Filing No. 35 at 6.) Correspondingly, because Rule 12(b)(6) assesses the sufficiency of the complaint, it would be a legal error to consider an affidavit filed by a defendant that contradicts the complaint's allegations.

The Court agrees.  The Seventh Circuit has pointed out that the distinction between motions arising under 12(b)(1) and 12(b)(6) "is not a picky point that is of interest only to procedure buffs." *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012).  "Rather, this distinction affects how disputed facts are handled, and it determines when a party may raise the point." *Id.* at 852-53.  On a 12(b)(1) motion, it is the burden of the party who seeks the exercise of jurisdiction—here, Barker—"to allege facts demonstrating that [s]he is a proper party to invoke judicial resolution." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  By contrast, a court deciding whether to dismiss for failure to state a claim under Rule 12(b)(6) must "'accept as true all of the allegations contained in a complaint,' subject, of course, to the limitations articulated in [*Twombly* and *Iqbal*]." *Minn-Chem*, 683 F.3d at 853 (quoting *Iqbal*, 556 U.S. at 678 (internal citations omitted)).

It is not appropriate when resolving Defendants' 12(b)(6) Motion to Dismiss to consider the evidence attached to that motion, including the affidavit of the Gila employee who swore that Barker received a refund for the administrative fees she paid.  One reason for that rule is the asymmetrical information the parties had at the time of filing due to ongoing discovery.  Attached to their Motion to Dismiss, filed on May 16, 2019, Defendants included the affidavit of Pulido, who attested to the fact that an administrative fee Barker paid "was reversed and credited back to Plaintiff's prepaid RiverLink account."  (Filing No. 39-2.)  Discovery continued and had not been completed by the time Barker responded to that motion, on November 8, 2019.  Notably, in a Joint Report on the Status of Discovery ten days after Barker filed her response, the parties declared that "Plaintiff's counsel further traveled to Texas to take the 30(b)(6) deposition of Defendant Gila, LLC on October 17, 2019; however, this deposition was not completed as Defendant's corporate representative was unable to address, discuss, or answer questions regarding a number of

11

deposition topics." (Filing No. 94 at 1.)  Under the "Discovery Pending/Scheduled" section of the report, the parties noted that "Gila's 30(b)(6) deposition was not completed and needs to be resumed." *Id.* at 2.  This asymmetry—that the defense can have full access to its own corporate representatives when it files its Motion to Dismiss, but the plaintiff has not had the opportunity to fully depose those representatives when forced to respond to that motion, is one reason the Supreme Court limits analysis of 12(b)(6) motions generally to the facts alleged in the complaint. Summary judgment takes place at the close of discovery because at that point the court has ensured that the parties have had every opportunity allowable under the rules to learn the factual details of the case.

The Defendants point out that on occasion this court will consider an item attached to a 12(b)(6) motion rather than convert the motion to one for summary judgment. Specifically, Defendants cite to *Coomes v. Republic Airline Inc.*, in which this Court, when ruling on a 12(b)(6) motion, considered an Equal Employment Opportunity Commission ("EEOC") charge authored by the plaintiff but attached to the defendants' motion.  No. 1:19-cv-00034-TWP-MPB, 2019 WL 4572800, at *3 n.2 (S.D. Ind. Sept. 20, 2019).  The EEOC charge was referred to in the complaint and central to plaintiff's claims.  *Coomes* is irrelevant to this case, as the affidavit prepared by Gila's employee is neither referred to in the Amended Complaint nor is it central to Barker's claims. Unlike the plaintiff in *Coomes*, who prepared the EEOC charge himself, Barker had limited information and limited opportunity to depose the employee or conduct other relevant discovery before she was forced to respond to the motion.  An example of an external document that the Court will consider at this stage of the litigation is the Toll Services Agreement, (Filing No. 39-11), which is mentioned several times in the Amended Complaint, (e.g., Filing No. 35 at 3), and is essential to the success of Barker's claim for Breach of Fiduciary Duty.  *See* Section III.B.2.d.,

*supra*.  While the Defendants are correct that there are circumstances under which this Court will consider an attachment to a 12(b)(6) motion—namely, when the attachment is both referred to in the complaint and central to the claims—this is clearly not one of those circumstances.

Defendants' other arguments in opposition to the Objection are unpersuasive as well. Defendants appear to contend that Barker waived her ability to challenge the Report and Recommendation on this issue by failing to raise the argument "that Defendants' record evidence conflicts with Plaintiff's allegation" before the Magistrate Judge.  (Filing No. 166 at 23.)  Barker has not waived this argument.  She is not required in her response brief to anticipate any legal error the Magistrate Judge might make and identify it so to preserve argument on it.  The Defendants attached their evidence to a Motion to Dismiss under 12(b)(1) and 12(b)(6).  The rules allow the Court to consider the attachments when addressing the 12(b)(1) motion and failing to anticipate that the Magistrate Judge would erroneously consider them as to the 12(b)(6) motion as well does not amount to waiver.  In short, Barker had no way of knowing during briefing that the Magistrate Judge would erroneously consider extrinsic evidence on a 12(b)(6) motion, and thus no obligation to argue against that eventuality.  Nevertheless, she *did* alert the Court that consideration of extrinsic evidence on a 12(b)(6) motion was contrary to law in a section of her response brief titled "Consideration of External Documents and Evidence in Relation to Defendants 12(b)(6) Arguments."  (Filing No. 92 at 13.)  Barker did more than enough to preserve her ability to challenge the Magistrate Judge's Report and Recommendation on these grounds.

Last, the Defendants argue that there is no factual conflict between the record evidence and the Amended Complaint.  *Id.*  A motion to dismiss filed under Rule 12(b)(6) tests the sufficiency of the complaint and nothing else.  It is irrelevant whether evidence turned up in discovery supports

or contradicts the allegations in the complaint—that is a question that must be answered on summary judgment or at trial.

Because the Magistrate Judge erroneously considered extrinsic evidence when resolving Defendants' Motion to Dismiss under 12(b)(6), Barker's Objection to the Magistrate Judge's Report and Recommendation is **SUSTAINED** as to that motion. But sustaining the objection does not amount to a denial of the Motion to Dismiss. The Court must address the many other arguments made in Defendants' 12(b)(6) Motion that the Magistrate Judge did not address because he determined Barker's injuries were not compensable under Indiana law.

**B.      The Merits of the Motion to Dismiss (Filing No. 39)**

**1.      Defendants' Rule 12(b)(1) Motion**

The Court is in wholehearted agreement with the Magistrate Judge's recommendation as to Defendants' Motion to Dismiss under Rule 12(b)(1). The following portion of the Magistrate Judge's Report and Recommendation is adopted with modifications (shown in braces) to standardize record citations and omit one footnote:

> Defendants argue that Plaintiff has no standing to sue for the alleged improper fee assessments because, to the extent that she paid them, they were refunded and "[c]ourts have consistently dismissed claims for a lack of factual standing when the plaintiff received reimbursement for the improper charge alleged." {Filing No. 39-1 at 22} {footnote omitted.}
>
> In response, Plaintiff advances two bases for standing aside from the refunded administrative fees: (1) the time value of money; and (2) the personal time Plaintiff lost "due to Defendants' wrongful conduct, including hours and hours of time spent on the phone, sending emails and correspondence, and using the internet, in an attempt to address and resolve the issues caused by Defendants' wrongful invoicing practices." {Filing No. 92 at 12}, and due to the fact that "when these issues continued to occur, Plaintiff also started to affirmatively avoid using the Riverlink toll bridges when traveling to Alabama to visit her daughter (a practice that she continues to this day)." *Id.* at 5-6. The Seventh Circuit has expressly found that these types of economic harms constitute the type of particularized injury necessary for standing. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 ("The plaintiffs have standing because "unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal,

and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective"); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) (time and effort resolving fraudulent charges on debit card constituted injury, even though charges were stopped by the bank before they went through). So too, here, Plaintiff has presented evidence that Defendants' allegedly improper billing practices caused her to pay them an administrative fee and thus temporarily lose that money, which constituted an injury to her, even though it was eventually credited back to her. In addition, she has presented evidence that she spent time and effort to "set things straight" in order to obtain the credit and to avoid having to pay additional administrative fees and penalties that she alleges she should never have been assessed. {[Filing No. 92-2 at 3](#)} ("I have spent dozens of hours of my time attempting to address and resolve the fact that I was being charged penalties and fees for failing to pay tolls for which I had never been provided notice, or the opportunity to pay, without such penalties and fees via a 1st Toll Notice. My efforts included calls to Riverlink (using the number provided on the Notice), correspondence and calls with the State Representatives representing Jeffersonville (where Riverlink's office was located) and my own district in Hamilton County, calls to the Indiana Governor's office and DOT, calls, letters, and emails with the Attorney General's Office, and a large amount of time researching the Riverlink toll issues online in an attempt at finding a way to pay tolls online and without incurring additional fees or penalties.") Accordingly, the Court finds that Seventh Circuit precedent dictates a finding that Plaintiff has standing in this case.

([Filing No. 131 at 7-9](#).)  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) is **denied**.

### 2.    Defendants' Rule 12(b)(6) Motion

The Defendants' Motion under Rule 12(b)(6) divides Barker's eight claims into four categories: (1) Unjust Enrichment and Money Had and Received; (2) Fraud-related Claims (Fraud, Violation of the IDCSA, Deception/Intentional Misrepresentation, and Constructive Fraud); (3) Negligence; and (4) Breach of Fiduciary Duty. ([Filing No. 39-1 at 2](#).)  Defendants' arguments for dismissal are organized around these categories, so the Court will adopt these categories for clarity.

### a)    Unjust Enrichment and Money Had and Received

Count I of the Amended Complaint alleges Unjust Enrichment based on the "amounts paid for penalties and/or administrative fees assessed or invoiced to Plaintiff and members of the

putative class." (Filing No. 35 at 10.) Count II alleges Money Had and Received on the same grounds. *Id.* at 10-11.

To plead a claim for unjust enrichment under Indiana law, a plaintiff must establish that "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without proper payment would be unjust." *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009).  Indiana courts have articulated three elements for this claim: "(1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167-68 (Ind. Ct. App. 2012) (citing *Woodruff v. Ind. Family & Soc. Serves. Admin.*, 964 N.E. 2d 784, 791 (Ind. 2012)).  To bring a "money had and received" claim, the plaintiff must satisfy three similar requirements: (1) the defendant receives money, (2) from the plaintiff, (3) under such circumstances that in equity and conscience ought not be retained by the defendants.  *Lawson v. First Union Mortg. Co.*, 786 N.E.2d 279, 283-84 (Ind. Ct. App. 2003).

Defendants argue that "[t]he common denominator between these claims—retention of Plaintiff's money by Defendants—is missing from Plaintiff's Amended Complaint." (Filing No. 39-1 at 25.) Defendants acknowledge that Barker alleges they "received the money" and were conferred a benefit, (Filing No. 35 at 9-11), but they argue the "relevant contracts confirm that the entirety of toll revenues, including the administrative fees at issue, went to the States of Kentucky and Indiana, and were not retained by either Kapsch or Gila." (Filing No. 39-1 at 26.)  In support of this contention, Defendants cite a contract and declarations attached to their motion.  But as the Court said above, it cannot consider this evidence on a 12(b)(6) motion, which only assesses the adequacy of the complaint.  Barker has satisfied the "retention" element of these two claims by

16

pleading in her Amended Complaint that the Defendants received and benefitted from the money she paid.  Defendants' Motion to Dismiss Barker's Unjust Enrichment (Count I) and Money Had and Received (Count II) claims is therefore **denied**.

b)  <u>Plaintiff's Fraud-Related Claims</u>

Barker asserts four fraud-related claims: Count III: Fraud, Count IV: Violation of the IDCSA, Count V: Deception/Intentional Misrepresentation, and Count VII: Constructive Fraud.

Fed. R. Civ. P. 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  If a claim rests on deceptive conduct, the complaint must meet Rule 9(b)'s heightened pleading standard.  The Seventh Circuit has interpreted this particular requirement to mean the complaint must identify the "who, what, when, where, and how" of the alleged fraud.  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).  The parties dispute whether the Amended Complaint meets this standard with regard to the fraud-related claims.

In the Amended Complaint, Barker alleges that she received two "2nd Toll Notices" without receiving "1st Toll Notices" beforehand.  (Filing No. 35 at 5.)  It goes on to say that "[t]hese notices were falsely identified as '2nd Toll Notices' when in fact no 1st Toll Notice had been provided to Plaintiff and the Notices were not, in fact '2nd' Toll Notices."  These notices misled Barker, who did not know whether a first notice had been sent but not received or whether one had not been sent at all.  *Id.* at 6.  Barker alleges the Defendants "have inappropriately charged motorists penalties as part of a scheme with the intent to defraud and mislead."  *Id.*  Later in the Amended Complaint, Barker alleges "Defendants made numerous material representations of past

17

or existing fact that were false, including statements regarding whether prior notice of tolls had been provided to Plaintiff and other Class members," and that "Defendants made these false material representations of past or existing fact with knowledge or reckless ignorance of their falsity." *Id.* at 12.

Defendants make contend these allegations fail to meet the Rule 9(b) standard. First, Defendants claim the Amended Complaint fails to allege an actual misrepresentation. (Filing No. 39-1 at 29.)  "Notably, the 2nd Toll Notices Plaintiff received do not state that Plaintiff was provided the 1st Toll Notice or when; they simply assess a $5.00 administrative fee." *Id.*  This argument fails because the Amended Complaint clearly alleges that the misrepresentation was that these notices purported to be the second the Defendants had sent, when in fact they were the first. Labeling the notice as the "2nd Toll Notice" when in fact it was the first toll notice is the fraudulent representation alleged by the Amended Complaint.

Second, Defendants argue the Amended Complaint "fails to identify any facts suggesting that each of the Defendants (let alone specific employee of each Defendant) made any alleged misrepresentation; instead making collective, in-the-aggregate reference to 'Defendants' or 'Defendant' (without specifying one) throughout the Complaint." *Id.* at 21.  This argument ignores page 4 of the Amended Complaint, which clearly lays out Barker's understanding of the relationship between the two Defendants and RiverLink in three concise paragraphs:

> 21. In performing their duties as  [Toll Services Providers] to provide notice and invoices for tolls, fees and penalties that were assessed to users of the RiverLink bridges and system, Kapsch and GILA operated under the name "RiverLink" rather than their own business names such that it is impossible to distinguish between the actions of one or the other without discovery.

> 22. However, it is believed based on documents available to Plaintiff at the time of filing this Complaint that GILA was responsible for services and actions relating to providing notice of tolls, fees and penalties and otherwise invoicing users for their use of the RiverLink bridges and system, including as is at issue in this litigation.

> 23. Pursuant to the § 7.4 of the [Toll Services Agreement], Kapsch is vicariously liable for all actions, omissions, negligence, willful misconduct, or breach of law or contract, of GILA in performing services relating to the RiverLink system.

(Filing No. 35 at 4.)  Without the benefit of discovery, it is difficult to see how the Amended Complaint could be any clearer about the alleged actions taken by each Defendant and the theories for liability based on those actions.  The Amended Complaint alleges that Gila likely prepared and sent the invoices but that Kapsch is vicariously liable for its actions or omissions pending discovery.

Third, the Defendants argue "the Amended Complaint fails to assert *any facts whatsoever* to suggest that the statements in the 2nd Toll Notice were made with intent to deceive, or even recklessly." (Filing No. 39-1 at 32.)  (Emphasis in original.)  While that may be true, Rule 9(b) does not require a plaintiff to plead specific facts as to a defendant's frame of mind.  It specifically says that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Amended Complaint has many general allegations of intent or knowledge, perhaps most directly when it alleges that Defendants "have inappropriately charged motorists penalties as part of a scheme *with the intent* to defraud and mislead."  (Filing No. 35 at 6.) (Emphasis added.)  As required in the Seventh Circuit, Barker's Amended Complaint alleges the "who, what, when, where, and how" of the fraud.  Thus, these four claims meet Rule 9(b)'s heightened pleading standard.

Defendants make two additional arguments as to Barker's fraud claims that can be addressed briefly.  First, they argue that Barker failed to allege that she reasonably relied upon the misrepresentations.  Defendants contend that Barker would have known whether she received a 1st Toll Notice, and that to pay the fee without having actually received that first notice would not be reasonable.  The Amended Complaint alleges reasonable reliance when it says that "Plaintiff paid the penalties/fees contained in the '2nd Toll Notices' to avoid additional penalties and fees

that would otherwise be assessed and that included even the placement of a Vehicle Registration Hold on Plaintiff's vehicle(s) at the BMV and actions by a collections agency against Plaintiff." *Id.* Barker alleges that she paid a $5.00 fee because she relied on the threats in the Toll Notice that an escalating fee schedule and other negative consequences would follow if she did not. That is an allegation of reasonable reliance. Last, Defendants argue that "Plaintiff's Constructive Fraud Claim Suffers From Additional Defects Requiring Dismissal." (Filing No. 39-1 at 35.) But, like several of Defendants' other arguments, this argument relies on evidence external to the Amended Complaint that the Court may not consider on a Rule 12(b)(6) motion.

The Court is not persuaded by Defendants' arguments that Barker's fraud-related claims should be dismissed. Thus, their 12(b)(6) Motion to Dismiss is **denied** as to Barker's claims of Fraud (Count III), Violation of the IDCSA (Count IV), Deception or Intentional Misrepresentation (Count V), and Constructive Fraud (Count VII).

### c)   Negligence

To succeed on a negligence claim under Indiana law, a plaintiff must prove three elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty. *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014). Defendants argue this claim should be dismissed because Barker "fails to adequately allege that Defendants owed a duty of care to the Plaintiff." (Filing No. 39-1 at 39.) The Court can dispense with this argument quickly. Barker alleges that "Defendants had a duty to use care when invoicing Plaintiff and other members of the putative Class in a manner that was accurate and in accordance with the notice and fee provisions required of Defendants by applicable law and Defendants' contracts." (Filing No. 35 at 15.) This allegation is sufficient to find survival of the duty prong under Rule 12(b)(6) motion.

Defendants also contend Barker's negligence claim is foreclosed by the economic loss doctrine. Generally, Indiana's economic loss doctrine states:

> Damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.

*Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 728 (Ind. 2010) (citation omitted). The doctrine "reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial laws rather than tort law." *Id.* at 729. The Indiana Supreme Court has announced a few exceptions to the rule, however, including claims for "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." *Id.* at 736.

The parties dispute whether the economic loss doctrine applies here. Defendants argue the doctrine necessitates dismissal, but Barker points out that the doctrine is meant to apply only in product liability cases. (Filing No. 92 at 22) (citing *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001) ("[Plaintiff's] damages are in no way the result of product failure; its loss thus is not 'economic' in the sense of the rule. Indiana courts have specifically explained that the rule does not apply outside the product failure context."). The Court need not decide whether the economic loss doctrine applies here because, assuming it does apply, Barker's negligence claim is allowed to proceed under the exception for allegations of "negligent misstatement." (Filing No. 35 at 15) ("Defendants breached these duties of care by negligently making false and misleading representations regarding whether a 1st Toll Notice had been sent prior to assessing an administrative penalty/fee and issuing a 2nd Toll Notice, without reasonable grounds for believing that the false and misleading representations were true").

Defendants' arguments that the Court should dismiss Barker's negligence claim are unavailing. Therefore, their 12(b)(6) Motion to Dismiss is **denied** as to Barker's claim for Negligence (Count VI).

### d)      Breach of Fiduciary Duty

The last claim alleged in the Amended Complaint is for Breach of Fiduciary Duty.  A claim for breach of fiduciary duty in Indiana requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).  The Defendants argue that Barker fails to allege that they owed a fiduciary duty to the users of the RiverLink system.

The Court is not persuaded by this argument.  Barker alleges that "[i]n their roles fulfilling the duties of the [Toll Service Providers], Defendants assumed and owed a fiduciary duty to Plaintiff and members of the putative class as users of the RiverLink Toll Bridges." (Filing No. 35 at 17.)  Moreover, this fiduciary duty is explicitly recognized by the Toll Services Agreement, which the Court may consider on Defendant's Rule 12(b)(6) motion because it is referenced in the Amended Complaint (*see* pages 3-5) and because it is central to this claim. The Toll Services Agreement specifically says that Defendants, as the Toll Service Providers "shall have a fiduciary duty to the Joint Board, the States' Parties and the users of the Bridges, and shall institute all necessary and proper mechanisms for custody and administration of the tolls." (Filing No. 39-11 at 38.)

The Court finds that the Amended Complaint contains sufficient allegations to bring a claim for Breach of Fiduciary Duty against Defendants. Thus, their 12(b)(6) Motion to Dismiss that claim (Count VIII of the Amended Complaint) is **denied**.

In summary, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED** as to each claim in the Amended Complaint, and all eight claims survive for trial.

**C.**     **Appeal of Magistrate Judge's Denial of the Motion to Intervene (Filing No. 195)**

Finally, the Court addresses the Intervenor-Plaintiffs' appeal—styled as an "objection"—of the Magistrate Judge's Denial of the Motion to Intervene.  As the Court denied Defendants' Motion to Dismiss, this Motion to Intervene is no longer necessary to preserve this litigation. However, intervention is relevant to the issue of class certification, a motion for which remains pending. (Filing No. 122.)

To begin, the Intervenor-Plaintiffs are not entitled to mandatory intervention under Fed. R. Civ. P. 24(a)(2).  That rule requires the Court to permit a person to intervene when: (1) the person claims an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may as a practical matter impair or impede the person's ability to protect his interest; and (3) the person's interest is not adequately protected by the existing parties to the action.

The Magistrate Judge ruled that the Intervenor-Plaintiffs had not established the second prong, and the Court agrees.  (Filing No. 190 at 3.)  The Magistrate Judge found that "[i]f no class is certified in this case, [the Intervenor-Plaintiffs'] legal interest will not be impaired, as Petitioners will be able to file their own suit and seek to represent the same putative class in that suit."  *Id.* Confirming that assertion, following the Magistrate Judge's denial of their Motion to Intervene, the Intervenor-Plaintiffs "filed a duplicative lawsuit, captioned *Monique Outzen, Robert Ardaiolo v. Kapsch Trafficcom USA, Inc., Gila, LLC*, 49D14-2003-CT-012573, on March 27, 2020 in order to preserve their rights and the rights of putative class members." (Filing No. 195 at 1.)  Nothing in the Court's order precludes the Intervenor-Plaintiffs from seeking redress in their own, currently-

pending action alleging the same claims as Barker.  *See Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) (affirming a district court's conclusion that the impairment prong had not been met by an intervenor who had already sought relief in a separate pending action); *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994) (affirming a district court's conclusion that the impairment prong had not been met by an intervenor who "remain[ed] free to initiate his own suit against [the defendant" regardless of the outcome of the underlying action).

The Magistrate Judge also denied the Intervenor-Plaintiffs' permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), which provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." As long as the requirement of that Rule is met, the decision whether to allow permissive intervention is "wholly discretionary."  *Planned Parenthood of WI., Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019).  "The Rule requires the court to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights, Fed. R. Civ. P. 24(b)(3), but otherwise does not cabin the district court's discretion."  *Id.* (citing *Shea v. Angelo*, 19 F.3d at 346 n.2).

In his order, the Magistrate Judge determined that the Intervenor-Plaintiffs' Motion to Intervene was timely—filed a mere eight days after the Magistrate Judge issued his Report and Recommendation indicating Barker's claims might be dismissed. He also complimented the Intervenor-Plaintiffs on their efforts to "minimize the delay and prejudice that would be caused if they were permitted to intervene" by filing briefs promptly, answering discovery requests, and proposing dates for depositions.  (Filing No. 131 at 5.)  The Court echoes that praise.  Nevertheless, the Magistrate Judge determined that granting the Motion to Intervene would result in undue delay because it would likely lead to another Motion to Dismiss and require the parties to re-brief the

pending Motion for Class Certification. *Id.* As permissive intervention is a "wholly discretionary" matter, the Court cannot find the Magistrate Judge's decision was clearly erroneous or contrary to law, as is required to set aside a Magistrate Judge's order under Fed. R. Civ. P. 72(a).

The Court is sensitive to the Intervenor-Plaintiffs' concern about judicial economy, and at some point joinder of their action and this one under Fed. R. Civ. P. 20 may become appropriate to alleviate that concern. But that concern does not change the Rules governing intervention or the standards the Court observes in reviewing the ruling of a Magistrate Judge. For those reasons, the Intervenor-Plaintiffs' Motion to Intervene (Filing No. 137) is **DENIED**.

## IV.   CONCLUSION

In summary, the Court issues the following rulings:

The Court **SUSTAINS IN PART AND OVERRULES IN PART** Barker's Objection to the Magistrate Judge's Report and Recommendation. (Filing No. 131.) The Court **SUSTAINS** Barker's Objection to the Magistrate Judge's Report and Recommendation as to Defendants' Motion to Dismiss under Fed. R. Civ P. 12(b)(6). The Court **OVERRULES** Barker's Objection to the Magistrate Judge's Report and Recommendation as to Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), and that portion of the report is **ADOPTED AS MODIFIED**.

The Court **DENIES** Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as to all claims. (Filing No. 39.) All eight of Barker's claims remain pending for trial.

The Court **DENIES** the Intervenor-Plaintiffs' Appeal of the Magistrate Judge's Denial of their Motion to Intervene. (Filing No. 195.) The Intervenor Complaint is **DISMISSED WITHOUT PREJUDICE**, and the Intervenor-Plaintiffs are dismissed as parties to this action.

Barker's Motion for Class Certification, (Filing No. 122), remains pending to be resolved in a separate order.

**SO ORDERED.**

Date:  6/1/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.com

Darren Andrew Craig
FROST BROWN TODD LLC (Indianapolis)
dcraig@fbtlaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Lauren Ashley Jacobsen
INDIANA ATTORNEY GENERAL
lauren.jacobsen@atg.in.gov

Irina Kashcheyeva
FOLEY & LARDNER LLP
ikashcheyeva@foley.com

Michael D. Leffel
FOLEY & LARDNER LLP
mleffel@foley.com

Jonathon Noyes
WILSON KEHOE & WININGHAM
JNoyes@wkw.com

Zachary D. Price
INDIANA ATTORNEY GENERAL
Zachary.Price@atg.in.gov

Emily Schmale
FROST BROWN TODD LLC (Indianapolis)
eschmale@fbtlaw.com

Carly Jolene Tebelman
FROST BROWN TODD
ctebelman@fbtlaw.com

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com