UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA BARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00987-TWP-MJD |
| | ) | |
| KAPSCH TRAFFICCOM USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO COMPEL**

This matter comes before the Court on Plaintiff's Motion to Compel Discovery [Dkt. 210]. The motion seeks an order compelling Defendant Kapsch Trafficcom USA, Inc. ("Kapsch") to respond fully to certain interrogatories and requests for production served by Plaintiff. Having considered the parties' briefs and the arguments made by counsel during a hearing on the motion on June 29, 2020, the Court **GRANTS IN PART** and **DENIES AS MOOT IN PART** the motion to compel for the reasons and to the extent set forth below.

**I. Background**

This is the third motion to compel filed by Plaintiff in this case. In the first two, which were directed to Defendant Gila, LLC ("Gila"), the Court set forth the following general standard:

> A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). This burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or

that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors, Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. August 2, 2006) (internal citations omitted). Moreover, in considering matters of proportionality, Rule 26(b) directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

***

When a party raises objections to discovery requests, the objecting party bears the burden to explain **precisely** why its objections are proper given the broad construction of the federal discovery rules. *In re Aircrash Disaster Near Roselawn, Inc. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997); *see also Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). Thus, general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such. *See Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"); *Burkybile*, 2006 WL 2325506, at *9 (overruling boilerplate objections made generally and without elaboration). . . . As other Seventh Circuit district courts have noted, "[m]aking general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied." *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008). . . . Further, when the objecting party raises nonspecific, boilerplate objections without clearly explaining how the request is objectionable, courts should overrule the objections in favor of broad discovery, pursuant to the federal rules. *Novelty*, 265 F.R.D. at 375 (holding that boilerplate objections without explanation are deemed waived); *McGrath v. Everest Nat. Ins. Co.*, 625 F.Supp.2d 660, 671 (N.D. Ind. 2008) (staying the objecting party must specify why the discovery request is improper); *In re Aircrash*, 172 F.R.D. at 307 (noting that the federal discovery rules should be construed liberally and broadly).

[Dkt. 59, Dkt. 70.] The same standard applies to the instant motion.

## II. Discussion

As an initial matter, the Court notes that Plaintiff frames this discovery dispute as involving, in large part, Kapsch taking the position that "it should not be required to respond to

2

discovery because discovery has also been served on Defendant Gila and there is overlap between some of the documents that each party has in its possession or control." [Dkt. 211 at 1.] The Court confirmed with Kapsch's counsel during the hearing that this is not (or at least is no longer) Kapsch's position; rather, Kapsch's position is that many of the responsive documents are not in its possession or control, but rather are in the possession and control of Gila. This position is equally problematic, however, as Kapsch's counsel also conceded that she did not know the extent to which Kapsch had the contractual right to obtain responsive documents from Gila or any other entities as part of Kapsch's "oversight role" over the toll billing process. It was Kapsch's obligation to search for and produce responsive documents that were in its control, which would include any documents in the possession of Gila or other non-parties that Kapsch had the right to obtain pursuant to the various relevant contractual agreements. This case was filed over fifteen months ago, and the discovery requests at issue were served over fourteen months ago. The fact that Kapsch's counsel is unaware of the universe of possible responsive documents within her client's control supports Plaintiff's skepticism of Kapsch's assurance that it has complied with its discovery obligations. So, too, does Kapsch's steadfast reliance on the fact that it lacks "administrative rights" to a document repository to excuse its failure to produce documents that it might nonetheless have the right to obtain. The Court expects counsel to remedy this glaring omission in Kapsch's discovery response process, determine whether there are any responsive documents in Kapsch's control that have not been produced, and supplement **all** of its discovery responses accordingly **within thirty days of the date of this Order**.

      Plaintiff also takes issue with the fact that Kapsch has not provided a privilege log. Kapsch's counsel confirmed during the hearing that Kapsch has not withheld any documents dated prior to the filing of this lawsuit on privilege grounds, but has withheld post-filing

documents as privileged.  Kapsch takes the position that it should not have to create a privilege log for post-filing documents, but concedes that, while this is the general custom among litigants, it is not the rule.  Plaintiff's counsel acknowledged during the hearing that requiring **all** withheld post-filing documents to be logged would be "busy work," as many will clearly be privileged.  However, Plaintiff reasonably requests that Kapsch be required to produce a privilege log as to post-filing documents that do not fall into certain obviously privileged categories.  That request is **GRANTED**.  **Within thirty days of the date of this Order**, Kapsch shall produce such a privilege log that identifies all responsive documents that Kapsch has withheld as privileged except those documents that: (1) relate solely to this lawsuit and/or the lawsuit captioned *Outzen et al. v. Kapsch Trafficcom USA, Inc.*, 1:20-cv-1286-TWP-MJD ("*Outzen*") exchanged between Kapsch and its outside litigation counsel (i.e., a lawyer who has filed an appearance in this case) and copied to no one else; (2) any documents relating solely to this lawsuit and/or *Outzen* exchanged between Kapsch's outside litigation counsel and Gila's outside litigation counsel and copied to no one else.  In addition, all documents relating to the Phase 2 remediation plan testified to by Vivian Raines that have been withheld as privileged must be logged, regardless of whether they fall under one of the two excluded categories.

     Finally, Kapsch argues that many of the perceived deficiencies in its responses that Plaintiff has identified are not deficiencies, but rather demonstrate that Plaintiff is improperly seeking information related to issues that are not implicated by Plaintiff's claims in this case.  Specifically, Kapsch distinguishes between Plaintiff's claim that she was charged an administrative fee and/or penalty when she never received an initial invoice (the "missing invoices" issue) and the claim of others that their initial invoices did not give them the required

period of time to pay before a fee and/or penalty was assessed (the "late invoices" issue").[1] The Court agrees that the "late invoices" issue is not directly within the scope of Plaintiff Barker's claims. However, Kapsch's claim that the documents pointed to by Plaintiff fall into this category and therefore were properly withheld as irrelevant is contradicted by the deposition testimony of Kapsch employee Vivian Raines. Raines testified about ongoing discussions about "Phase 2" of a "remediation plan" to address "customer[s] that might have been impacted by an invoice issue" and explained that the "invoice issue" included "a situation where invoices were actually not being sent to people at all, but they were still charged [an] administrative fee for not paying an invoice that had never been printed or mailed to them," as well as invoices that were "received late." [Dkt. 239 at 82, 84]; *see also id.* at 85 (Raines answering "yes" to the following question: "So Phase 2, then, involves refunds that are for either invoices that were never sent at all, and just missing invoices and then a fee is assessed . . . .").[2] Given this clear and unequivocal testimony, Kapsch is not entitled to withhold on relevancy grounds any information or documents related to Phase 2 of the remediation plan about which Raines testified. Indeed, as the testimony of Ms. Raines makes clear, the relevance distinction Kapsch seeks to draw is too fine a line and too subject to error; Defendants themselves did not consider the two invoice

---

[1] The late invoices issue is raised by the plaintiffs in *Outzen*. An order to show cause why that case should not be consolidated with this case is pending.

[2] The Court recognizes that the deposition transcript of Ms. Raines has been filed under seal pursuant to the Protective Order in this case. *See* [Dkt. 34 at 3] ("Deposition testimony will be deemed provisionally protected for a period of 30 days after the transcript is released to the parties by the court reporter."). However, the Court does not believe that the testimony quoted herein is entitled to remain under seal, as it does not satisfy the requirements for sealable material.

issues as wholly distinct problems that occurred in a vacuum.³  Accordingly, Kapsch's relevancy objections are **overruled**, and Kapsch is ordered to produce all documents and information responsive to Plaintiff's discovery requests, whether considered by Kapsch as relevant to the "missing invoices" issue or the "late invoices" issue.  Kapsch shall produce the withheld documents and provide the withheld information **within thirty days of the date of this Order**.  This includes any documents referenced in the timeline that Raines testified about, *see* [Dkt. 233-3], that Kapsch has not already produced.⁴

In addition to these general issues, Plaintiff identifies several interrogatories and related document requests to which she believes Kapsch has not fully responded.  Each is addressed, in turn, below.

### A.  Interrogatory No. 2

Interrogatory No. 2 reads:

Identify all individuals who have or may have knowledge or information related to any of the matters alleged in the Complaint, or your Answer or Affirmative Defenses thereto, including but not limited to any claims or defenses of the parties, and for each such person provide a detailed description of that person's knowledge

---

³ Another example of the interrelatedness of the two issues relates to evidence Kapsch might offer in defense of Plaintiff's claims.  Plaintiff claims that she and others received penalty invoices without having first received an initial invoice for payment.  In response to that claim, Kapsch will presumably offer evidence that an initial invoice was sent to each individual who was charged a penalty or administrative fee.  That evidence, whether a copy of the invoice or an entry in a database demonstrating that an invoice was sent, would likely also show the date the invoice was sent.  Due to the class allegations, such information relating to every individual who was charged a penalty or fee is relevant; Kapsch doesn't get to pick and choose and only produce information regarding those individuals **it** believes have a claim.  In addition, the date of the invoice is relevant even in a "missing invoice" case, because an initial invoice sent on the same day as a second invoice would be the functional equivalent of no initial invoice at all.  Because this is evidence Kapsch should offer in defense of the case, it likely should have all been identified and produced as part of its initial disclosures, more than a year ago.

⁴ The timeline specifically identifies various emails, and also refers to presentations and slide decks.

or information and identify any documents in his/her possession relevant to this litigation.

[Dkt. 211-1 at 6.]   In its original response, served in May 2019, Kapsch responded as follows:

Kapsch objects to Interrogatory No. 2 because it is overly broad, seeks information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and imposes upon Kapsch burdens and expenses that outweigh the likely benefit of discovery.  Kapsch further objects to Interrogatory No. 2 as premature because Plaintiff recently filed her First Amended Complaint, and the deadline for Kapsch to file its answer and affirmative defenses has not yet passed.  Further, employees of Kapsch do not have personal knowledge concerning the invoicing of Plaintiff because Kapsch has delegated that function to another company.  Subject to and without waving those objections, Kapsch states that the following people have knowledge concerning the matters alleged in the Complaint:

Melissa Barker may have information concerning the allegations asserted in her First Amended Complaint.

Raquel Pulido, Account Manager for Gila, LLC has knowledge concerning the resolution of Plaintiff's complaint concerning the use of the Riverlink Toll Bridges and the knowledge set forth in the Declaration she filed in support of Defendants' Motion to Dismiss.

Peter Aczel, General Manager of Central Region North America, Delivery and Operations for Kapsch TrafficCom USA, Inc. has knowledge concerning the resolution of Plaintiff's complaint concerning the use of the Riverlink Toll Bridges.  Angie Kemble, Project Manager for Kapsch TrafficCom USA, Inc. has knowledge concerning the resolution of Plaintiff's complaint concerning the use of the Riverlink Toll Bridges.

Vivian Raines, Senior Project Manager for Kapsch TrafficCom USA, Inc. has knowledge concerning the resolution of Plaintiff's complaint concerning the use of the Riverlink Toll Bridges.

[Dkt. 211-3 at 2-3.]   Subsequent to the filing of this motion, on June 8, 2020, as promised by

Kapsch in its May 4, 2020, letter that was sent following the parties' final meet and confer prior

to the motion, *see* [Dkt. 219-4], Kapsch supplemented its response to Interrogatory No. 2.[5] [Dkt. 219-5.] Kapsch identifies numerous additional individuals in its supplemental response, but does not identify any related documents. In her reply brief, Plaintiff states that "these answers remain incomplete, misspell many of the names of witnesses, and do not provide a usable description of the information known/documents possessed by those individuals nor contact information as requested in the definition of 'Identify' as it relates to an individual." [Dkt. 227 at 6 n.1.] The Court agrees. Kapsch's objections to this interrogatory are **overruled**. **Within thirty days of the date of this Order**, Kapsch shall supplement its response to provide all of the information requested by Interrogatory No. 2 with regard to each identified person. Given that many of the individuals listed are not employees of Kapsch, Kapsch may be unaware of what documents they possess or what specific information they have and may not have contact information for the individual; if that is the case, it shall so state as to each such individual, but shall at a minimum provide contact information for the individual's employer, if known. Kapsch also shall review all information in its possession and control to ensure that its response to this interrogatory is

---

[5] It is entirely unclear why Kapsch failed to supplement its response to this interrogatory sooner; indeed, it is unclear why the new individuals contained in the most recent response were not identified in Kapsch's earlier responses. Kapsch's explanation at the hearing—that the individuals were identified as a result of Peter Aczel's deposition in April 2020—is nonsensical. Aczel was identified as the person who provided the information in Kapsch's original response to the interrogatory. [Dkt. 211-3 at 1.] Perhaps Aczel was not aware when he prepared Kapsch's initial discovery responses that all of the individuals identified in Kapsch's June 2020 supplemental response had relevant knowledge; certainly he could have learned additional information during the course of the litigation. However, Kapsch had an obligation to supplement its responses as that additional information was obtained, not just when it was revealed in a deposition. Kapsch's counsel's suggestion that the additional witnesses were not initially identified because they were thought to have information regarding the late invoice issue rather than the missing invoice issue further underscores the impropriety of that distinction discussed above.

complete and unequivocal and identifies **all** individuals who may have knowledge or information related to the issues in this case.

### B. Interrogatory Nos. 4 and 6 and Document Request No. 2

Interrogatory No. 4 reads:

Identify all individuals who were invoiced, provided notice, requested, or required, to submit payment, for amounts allegedly owed arising out of use of any Riverlink Toll Bridge(s) and for each such individual, state the following:

  a. The date(s) and location(s) on which such toll(s) were incurred;
  b. The amount charged to that individual for such toll(s);
  c. The date on and address to which the first Notice(s) of Toll was sent;
  d. The date on and address to which any subsequent Notice(s) of Toll was sent:
  e. The manner of mailing or other delivery for any and all Notice(s) of Toll sent;
  f. Identify any proof or evidence of mailing for any and all Notice(s) of Toll sent:
  g. Identify any proof or evidence of delivery for any and all Notice(s) of Toll sent:
  h. The amount of any administrative fee or penalty assessed, invoiced, or charged to that individual in relation to such Toll(s);
  i. Any documents or information you have that an individual did not receive any Notice(s) of Toll sent;
  j. The amount paid and date of payment by the individual for such Toll(s);
  k. The identity of the recipient of any such payment;
  l. The use of funds from any such payment; and
  m. Identify any documents evidencing or relating to the information sought in this Interrogatory.

[Dkt. 211-1 at 6.]   Kapsch's supplemental response[6] to Interrogatory No. 4 reads:

Kapsch objects to Interrogatory No. 4 because it is overly broad, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case.  Plaintiff requests information about all invoices for use of the Riverlink Toll Bridges, regardless of whether those

---

[6] Kapsch's counsel confirmed during the hearing that Kapsch's supplemental interrogatory responses were self-contained and did not incorporate its earlier responses and the objections contained therein.

9

>   invoices were first, second, or subsequent notices and regardless of what charges were included on those invoices.
>
>   Subject to and without waiving those objections, Kapsch states that pursuant to the Subcontract Agreement executed between Kapsch and Gila (produced by Gila as GILA-BARKER-000001-GILA-BARKER-0000056), Gila is responsible for the act of, and Kapsch has only an oversight role in, invoicing, providing notice to, requesting, or requiring individual users of any Riverlink Toll Bridge to submit payment for amounts allegedly owed arising out of use thereof. Kapsch directs Plaintiff to Gila's September 17, 2019 "Amended Responses and Objections" to Interrogatory No. 4, discussing the business records produced by Gila via hard drive on September 13, 2019.

[Dkt. 211-5 at 3.] In its brief in response to the instant motion, Kapsch states that it "cannot make a production where, due to its supervisory only role, it is not in custody or control of documents maintained by Gila." [Dkt. 219 at 9.] As discussed above, at the hearing, Kapsch's counsel could not confirm that the information in question was not in the control of Kapsch for discovery purposes, even if it is in the possession of Gila. Kapsch's counsel shall make this determination and, as ordered above, shall provide complete and unequivocal responses to Interrogatory No. 4, along with Interrogatory No. 6, which seeks additional information about individuals identified in response to Interrogatory No. 4, and Document Request No. 2, which requests documents identified in response to Interrogatory No. 4.

That said, if read literally, Interrogatory No. 4 is clearly overly broad on its face, as it would literally encompass any information Kapsch has about any individual who ever paid a Riverlink toll. Plaintiff is clearly entitled to the information sought in subparts a-e and h-k as to all individuals who were billed for tolls, all of which should be readily ascertainable from Defendants business records. However, as to the remaining subparts (f, g, l, and m), to the extent those requests require Kapsch to search for and produce information beyond that which would be contained in a database or billing system, the Court finds that Kapsch's responses to

Interrogatories Nos. 4 and 6 and Document Request No. 2 may be limited to those individuals who were assessed an administrative fee or penalty.  With this exception, Kapsch's objections to Interrogatories Nos. 4 and 6 and Document Request No. 2 are **overruled**, and Kapsch is ordered to provide a complete and unequivocal response to those requests,

### C.  Interrogatory No. 11 and Document Request No. 3

Interrogatory No. 11 reads:

> Do you admit that some individuals were assessed, charged, invoiced, or provided notice to pay administrative fees or penalties in a second (or other later) Notice of Toll where said individual(s) did not receive a first Notice of Toll?  If so, identify all such individuals and instances and provide a detailed explanation identifying all facts and documents evidencing, relating to, or otherwise describing the reason for each such occurrence.  If not, identify all documents evidencing, relating to, or supporting your assertion that such did not occur.

[Dkt. 211-1 at 8.]   Kapsch's supplemental response to Interrogatory No. 11 states:

> Kapsch does not admit that some individuals were assessed, charged, invoices, or provided notice to pay administrative fees or penalties in a second (or other later) Notice of Toll where said individual(s) did not receive a first Notice of Toll. Kapsch objects to the request to 'identify all documents evidencing, relating to, or supporting your assertion that such did not occur' because that request purports to shift the burden of proof to Kapsch to prove it is not liable.  Kapsch further objects to Interrogatory No. 11 because it invades the attorney-client privilege and work-product doctrine by asking Kapsch to identify what specific documents it will use to contest liability.
>
> Subject to and without waiving those objections, Kapsch states that pursuant to the Subcontract Agreement executed between Kapsch and Gila (produced by Gila as GILA-BARKER-000001-GILA-BARKER-0000056), Gila is responsible for the act of, and Kapsch has only an oversight role in, assessing, charging, invoicing, or providing notice to individuals to pay administrative fees or penalties in a second (or later) Notice of Toll.  Kapsch directs Plaintiff to Gila's September 17, 2019 "Amended Responses and Objections" to Interrogatory No. 11, discussing the business records produced by Gila via hard drive on September 13, 2019.

11

[Dkt. 211-5 at 5-6.][7] Document Request No. 3 asks for the documents identified in Interrogatory No. 11. [Dkt. 211-4 at 5.] Kapsch's supplemental response states:

> As stated in its response to Interrogatory No. 11, Kapsch objects to the request to 'identify all documents evidencing, relating to, or supporting your assertion that such did not occur' because that requests purports to shift the burden of proof to Kapsch to prove it is not liable. Kapsch further objects to Request No. 3 because it invades the attorney-client privilege and work-product doctrine by asking Kapsch to identify what specific documents it will use to contest liability. Moreover, Kapsch is not in possession, custody, or control of any responsive documents. (*See* Kapsch's Revised Answer to Interrogatory No. 11; and Gila's September 17, 2019 'Amended Responses and Objections' to Interrogatory No. 11.) Accordingly, Kapsch is not producing documents responsive to Request No. 3.

[Dkt. 211-6 at 2.] Kapsch's privilege objection is curious, inasmuch as it was already required, as part of its initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), to produce all documents in its possession, custody, or control that it "may use to support its claims or defenses." Also curious is its argument that the interrogatory "impermissibly shifts the burden of proof onto Kapsch." [Dkt. 219 at 14.] Of course it does no such thing; it simply seeks documents—if there are any—that support or relate to its position—if it intends to take the position—that no individuals were "assessed, charged, invoice[d], or provided notice to pay administrative fees or penalties in a second (or other later) Notice of Toll where said individual(s) did not receive a first Notice of Toll." Kapsch's objections to Interrogatory No. 22 and Document Request No. 3 are **overruled**. If there are no responsive documents, Kapsch should so state in response to Interrogatory No. 11; if there are such documents, Kapsch shall

---

[7] As Kapsch notes, the Court has previously noted in this case that "[i]n general, using the word 'admit' in an interrogatory is best avoided. The purpose of interrogatories is to obtain information or pin down a party's contentions; requests for admission are the correct mechanism for asking a party to admit a particular fact." [Dkt. 70 at 6.] The interrogatory in question was served prior to the Court's order, however.

provide a complete and unequivocal response to the interrogatory and produce the documents in response to Document Request No. 3 **within thirty days of the date of this Order**.

### D. Interrogatories Nos. 9 and 10

These interrogatories seek information regarding Kapsch's affirmative defenses and any non-party defense. Kapsch responded that it had "not yet asserted any affirmative defenses and is still considering what defenses it may raise" and that "[a]t this time, Kapsch does not claim that any non-party is responsible, in whole or in part, for the claims and liabilities asserted in the Complaint." [Dkt. 211-3 at 6-7.] That was accurate at the time; Kapsch did not file its answer in this case until two weeks ago. During the hearing, Kapsch's counsel committed to serving its supplemental answer to these interrogatories the following day. Accordingly, the motion to compel is moot as to these interrogatories. That said, Kapsch's privilege/work product objection to Interrogatory No. 9 is not well taken and is hereby **overruled**.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to compel [Dkt. 210] is **GRANTED** as to Interrogatories Nos. 2, 4, 6, and 11 and Document Requests Nos. 2 and 3. Kapsch shall supplement its responses and shall completely and unequivocally respond to Plaintiff's interrogatories and document requests as required by this Order **within thirty days of the date of this Order**. Kapsch shall produce the privilege log required by this Order **within thirty days of the date of this Order**. The motion to compel is **DENIED AS MOOT** as to Interrogatories Nos. 9 and 10, with the exception noted above.

SO ORDERED.

Dated: 1 JUL 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.